CITY OF HOUSTON v. RACHEL B. STEWART.

Decided November 6, 1905.

**1.—Cities—Payment of Taxes—Paving Certificates.**

Where a city charter required the payment of city taxes in money only, except that coupons and scrip, made receivable on the face for taxes, should be receivable for all taxes except the bond tax, an ordinance making paving certificates receivable in payment of the bond taxes was void.

**2.—Same—City Claiming Invalidity of Ordinance.**

The city, as trustee for the bondholders in the collection of taxes levied to pay the bonds, could interpose any objection to the validity of the ordinance making the paving certificates receivable for taxes which the bondholders might interpose had they been parties to the suit.

**3.—Same—Void Settlement as Admission of Debt—Compromise Offer.**

A settlement between the city and a taxpayer as to the amount of taxes due which is in the nature of a compromise and is void because of an unauthorized agreement by the city to receive paving certificates in payment, can not be treated as an admission by the taxpayer that she owed the amount so agreed upon.

**4.—Same—Proof of Taxes Due—Assessment Rolls—Void Settlement.**

In an action by a city for taxes the city could, as provided in its charter, show a prima facie valid levy and assessment by the introduction of the assessment rolls, and an entry of payment made on the rolls by virtue of a settlement which was void did not affect their admissibility nor their probative force.

**5.—Same—Assessment for Taxation—Separate City Lots—Estoppel.**

A taxpayer owning several lots not used together for one purpose and as one piece of property is entitled to have them assessed separately, but where he renders them himself in bulk he is estopped thereafter from claiming that such an assessment is illegal.

**6.—Same—Limitations—Suit for Taxes.**

A city charter provision giving to any delinquent taxpayer the right to plead the four years' statute of limitations in any suit for taxes due the city is valid except as it applied to suits pending at the time it was passed, and with the qualification that a reasonable time would be allowed the city in which to institute suits for taxes due prior to its passage.

**7.—Same—Estoppel—Limitations.**

The taxpayer was not estopped to so plead limitations by the fact that her son and general agent was attorney for the city and failed to bring any action

to recover the taxes for the city, there being no allegation of fraud or collusion between the defendant and the City Attorney.

**8.—Same—Rights of Bondholders—Limitations.**

A plea that the application of the statute of limitations would offset the rights of the bondholders, not parties to the suit, was without merit, since their rights would necessarily be barred along with that of the city to enforce the collection of the tax.

**9.—Same—Plea in Reconvention—Pleadings—Limitations.**

Defendant's plea in reconvention claiming a commission on judgments obtained for the city by the City Attorney and assigned to her was insufficient where it failed to show when the judgments were paid, as plaintiff was entitled to have the plea show whether any part of the claim was barred.

**10.—Same—Limitations—Claim by Officer for Commissions.**

Such claim, the commissions having been earned under a city ordinance fixing the City Attorney's salary and fees, was not founded on a written contract, so as to be governed by the four years' statute of limitations.

**11.—Same—Attorney Fees—Tax Suits.**

A city charter provision entitling the City Attorney to a fee of five percent of the amount of the taxes collected by suit, which should be taxed as costs against the property, could not have a retroactive effect so as to charge the property of delinquent taxpayers with an additional five percent on taxes due prior to such provision.

**12.—Same—Commissions for Collecting.**

The city council had authority to allow the City Attorney, as compensation, a commission of ten percent on all sums collected by him by action to enforce taxes due prior to the time the charter provision for five percent took effect. The fact that judgments obtained by him for taxes were paid after he went out of office did not affect his right to the commissions, and he was entitled to a pro rata share of commissions due on judgments collected by the city in suits brought by him, but not decided when he went out of office.

**13.—Same—City Warrant—Signature of Officer.**

Where a city warrant is signed by the assistant auditor, instead of the auditor, it will be presumed, in the absence of evidence as to the powers of the assistant auditor, that he had authority to act in the premises, and it is immaterial that his signature appears across the face of the warrant, instead of at the bottom.

**14.—Same—Evidence—Assessment Rolls.**

Objection to the manner in which the assessment rolls have been prepared should be made to their introduction in evidence, and not to the testimony of the assessor identifying them as the records of his office.

**15.—Same—Printed City Ordinances.**

A printed pamphlet which bore upon the cover the indorsement, "The City Charter of the City of Houston, together with the Revised Code of Ordinances Prepared by Direction of the City Council, and Adopted by Resolution on the 27th day of December, 1866," sufficiently purported to have been published by authority of the city council and was admissible in evidence—following Railway v. Washington, 63 S. W. Rep., 538—where it appears that the city charter requires the city council to publish its ordinances and gives to the published ordinance, as evidence, the same effect as the original ordinance.

**16.—Same—Tax Rolls as Proof of Liability—Prima Facie Case.**

Where a city charter provision made the tax rolls prima facie evidence that the tax is due and that the facts stated therein are true and that all prerequisites required by law pertaining to the levying and assessing of the tax have been complied with, the city is not required to do more. in a suit for taxes than introduce the tax rolls in order to make out its case, unless defendant

can show that the rolls were illegally prepared, or that the prerequisites of the levy and assessment have not been complied with.

### 17.—Costs—Apportionment.

The trial court has authority under the statute to apportion the costs in any case if good cause for not following the ordinary rule exists, but the reason for so adjudging cost must be stated in the record. Rev. Stats., art. 1438.

Appeal from the District Court of Harris. Tried below before Hon. Chas. E. Ashe.

*T. H. Stone, W. J. Howard* and *E. P. Phelps,* for appellant.—Where it appears that, for a number of years, the property owner renders for assessment of taxes, as one tract, several city lots in the same block, and that for intervening years the assessor and collector has assessed them on the unrendered roll in the same manner, the last mentioned assessment is not an assessment in bulk, and the property owner will be estopped from complaining of the manner of assessment, and from pleading assessment in bulk. Harris v. City of Houston, 21 Texas Civ. App., 432; Turner v. City of Houston, 21 Texas Civ. App., 214; McCombs v. City of Rockport, 14 Texas Civ. App., 560; Guerguin v. City of San Antonio, 19 Texas Civ. App., 98; 27 Am. & Eng. Ency. of Law (2d ed.), 688, and cases there cited.

*Stewart, Stewart & Lockett* and *Brashear & Dannenbaum,* for appellee.—1. A municipal corporation can not prescribe a retroactive penalty for neglect to pay taxes promptly, nor the right to prescribe any penalty, unless expressly authorized to do so. City of San Antonio v. Raley, 32 S. W. Rep., 180; Cave v. City of Houston, 65 Texas, 619; Insurance Co. v. Ray, 50 Texas, 511; Ryan v. State, 5 Neb., 276; State v. Mayor, etc., 8 Vroom, 39.

2. Where an attorney's fee is for a percentage of the amount collected, it is not necessary that he actually collect the money to entitle him to his percentage when he has prosecuted the suit to final judgment. Beard v. City of Decatur, 64 Texas, 11; James v. Turner, 78 Texas, 243; City of Denison v. Foster, 28 S. W. Rep., 1052; Levy v. Du Bose, 3 Texas Civ. App., 68; Atchison v. City of Owensboro, 71 S. W. Rep., 864; Raley v. Smith, 73 S. W. Rep., 54; Bright v. Hewes, 18 La. Ann., 666; City of Austin v. Walton, 68 Texas, 510; Hardin v. McKitrick, 28 Ky., 667; Luco v. De Toro, 91 Cal., 405.

3. The lots into which town or city blocks are subdivided are regarded as separate and distinct tracts of land, and each lot should be separately assessed. Clegg v. State, 42 Texas, 206; State v. Baker, 49 Texas, 764; Edmonson v. Galveston, 53 Texas, 161; McCombs v. City of Rockport, 37 S. W. Rep., 988; Maddox v. City of Rockport, 38 S. W. Rep., 397.

4. The warrant having been shown to have been signed by the mayor and finance committee, and endorsed by the assistant auditor, and received in payment of taxes by the proper officer, the failure of the auditor to sign it did not render it invalid against the appellant. Thornburgh v. City of Tyler, 16 Texas Civ. App., 439; Minor v. Loggins, 14 Texas Civ. App., 15.

5. A city can only act through its officers, and if the officers, within the scope of their authority, fail to do their duty, the city is liable. The Legislature gave the taxpayer the right to plead the statutes of four years' limitation to taxes, and the law allowed the city a reasonable time to file suits to collect said taxes, and if they fail to do so the city's claim is barred by limitation. The bondholder must look to the city for his debt. Link v. City of Houston, 59 S. W. Rep., 566.

6. The court did not err in refusing to allow appellant to introduce the unrendered assessment rolls for the years 1887 and 1889, because the rolls were offered as prima facie evidence to prove the taxes due for the years 1887 and 1889, and when these rolls are offered as such prima facie evidence you have to offer the entire rolls, and can not offer any particular portion of it, and the rolls contain an entry on them that the taxes are paid, and that the rolls must be taken in their entirety to be of any avail as prima facie evidence, and if a part is not true, then the entire rolls must be rejected as having any effect as prima facie evidence. Transportation Co. v. Boyd, 67 Texas, 153; Crayton v. Munger, 11 Texas, 235; Covet v. Archer, 52 Texas, 169; Butler v. Dunagan, 19 Texas, 566; Hoper v. Hall, 30 Texas, 159.

7. In a suit where judgment is in part for one party, and in part for another party, the costs may be apportioned by the court. Rev. Stats., art. 1438; Cannon v. Hemphill, 7 Texas, 184; Payne v. Benham, 16 Texas, 364; Wheatley v. Griffin, 60 Texas, 209.

8. The charter of the city of Houston provided that any delinquent taxpayer shall have the right to plead in any court, and to rely upon the statutes of limitation of four years in any suit for taxes alleged to be due the city of Houston. The city had a reasonable time after the passage of the charter in which to bring suit, and it is a question of fact for the court to determine whether suit has been brought within a reasonable time. Special Laws, 26th Leg., p. 188; Link v. City of Houston, 59 S. W. Rep., 566; Link v. City of Houston, 60 S. W. Rep., 664; Williamson v. New Jersey, 130 U. S., 189; 25 Am. & Eng. Ency. of Law, p. 591; 13 Am. & Eng. Ency of Law, pp. 688-700.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellant against appellee, Rachel B. Stewart, in her individual capacity, and as executrix and sole devisee under the will of Charles Stewart, deceased, to set aside a compromise settlement of taxes made by appellee with the officers of the city in 1902, and to recover taxes alleged to be due the city by appellee for the years 1877, 1881, 1882, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1895, 1896, 1897, 1898 and 1901, and to foreclose a tax lien upon property described in the petition.

It is alleged in the petition that the defendant was claiming to have paid and discharged said taxes by delivering to the city collector three refunding certificates, issued by the city of Houston, of the aggregate face value of $2,325, and a warrant for $1,675, issued by said city to John S. Stewart in payment for legal services rendered it by him, which warrant had been assigned to defendant; that said alleged settlement was had under an order of the city council made upon application of defendant through her attorney, J. W. Lockett, which application showed that the city was then claiming that the taxes due it by defendant

amounted to the sum of $7,550, and that said settlement was void because it was an attempt on the part of the city council and city collector to remit, discount and compromise taxes legally due the city, contrary to the city ordinances, and because said certificates and warrant were illegally issued, and were not receivable in payment of taxes due the city.

The petition contains an itemized statement of the several amounts claimed to be due the city by the defendant as taxes, the aggregate amount claimed being $5,174.75, together with interest, penalties and costs. Plaintiff prayed that said alleged tax settlement be set aside; that the receipt for taxes issued therein, and said illegal certificates and warrant, be held invalid and canceled, and that it recover judgment against the defendant for the taxes alleged to be due it, with foreclosure of its tax lien upon the property described in the petition.

The defendant answered by general denial and by numerous exceptions and pleas, the nature of which, so far as they relate to the matters discussed in this opinion, will be hereinafter disclosed. She further specially pleaded the settlement alleged in plaintiff's petition, and prayed that it be upheld, and in the alternative, by plea in reconvention, sought to recover from plaintiff the amount evidenced by said certificates and warrant, and further sums alleged to be due John S. Stewart for legal services rendered the city, and which had been assigned to defendant, the nature and amount of said claims being shown on exhibits attached to the answer.

In reply to defendant's plea in reconvention plaintiff, in addition to the general denial, pleaded the statutes of limitation of two and four years, and also that said refunding certificates were illegal and void because the provision of the charter, and the ordinance of the city under which they were issued, were unconstitutional in that thereby the city attempted to create a debt in violation of the Constitution of the State. The invalidity of said warrant was also alleged on the ground that it was not signed by the city auditor.

In avoidance of defendant's plea of limitation of two and four years, plaintiff pleaded: "That John Stewart was the son and agent of the defendant, and a member of the firm of Stewart, Stewart & Lockett, composed of said Chas. Stewart and said John S. Stewart and J. W. Lockett, up to the death of Chas. Stewart, in 1895, and thereafter up to the date of the filing of said petition composed of the surviving members, and that he was city attorney from December, 1892, to April, 1900, and thereafter said firm of Stewart & Lockett were employed to assist the city attorney until April 14, 1902, and that it was the duty of said Stewart, as such city attorney, and assistant city attorney, to institute suit for the collection of said taxes, and he being the agent and attorney of defendant during that time, his failure and neglect so to do estops defendant from pleading said statutes of limitation."

In further avoidance of said plea plaintiff alleged: "That there has been issued one million dollars in bonds by the plaintiff, the city of Houston, and that the taxes levied on the property in the city are the only assets out of which to pay said bonded indebtedness, and that, at the time said bonds were issued, and said debts incurred, the plaintiff pledged to the owners and holders of same the taxes to be levied, as-

sessed and collected for that purpose, and that said taxes are the only means plaintiff has to pay off said indebtedness."

Upon the hearing in the court below the trial judge instructed the jury to find a verdict for the plaintiff for the sum of $2,733.06, taxes due for the years 1895, 1897, 1898 and 1901, upon the property described in the petition, and in favor of the defendant on her plea in reconvention for the sum of $2,518.09, said sum being the amount found by the court to be due upon the claim of John S. Stewart against the city which had been assigned to defendant.

Upon a return of a verdict in accordance with these instructions judgment was rendered for plaintiff for said sum of $2,733.06, with foreclosure of the tax lien, and for defendant for the sum of $2,518.09. The cost of suit was adjudged to be paid by plaintiff and defendant in equal proportions. From this judgment both parties have appealed.

The appellant's brief presents seventy-nine, and the appellee's twenty-three, assignments of error. We shall not attempt to discuss these assignments categorically, nor in detail, as no useful purpose would be thereby subserved, and a useless expenditure of time and labor would be required.

None of the various assignments, which present in different forms the questions of the validity of the refunding paving certificates issued by the city under the amendment of its charter passed in 1899, and the validity of the charter provisions and ordinances providing that two of the members of the city board of appraisement should be members of the board of aldermen, can be sustained. These questions were certified by this court to the Supreme Court, and the answer of that court sustains the validity of the certificates and of the board of appraisement constituted under the charter provisions and ordinances above mentioned. (City of Houston v. Stewart, 99 Texas, 67, 13 Texas Ct. Rep., 55.)

The opinion of the Supreme Court above referred to does not, however, determine the question of whether these certificates were receivable for taxes levied for the purpose of providing a sinking fund for the redemption of the bonds of the city and a fund for the payment of the interest on said bonds, and we are of opinion that they were not receivable in payment of such taxes. Section 40 of the charter of the city of Houston, as amended in 1899, and which was in force at the time the settlement between the city and Mrs. Stewart was made, contains the following provision:

"Nothing but current money of the United States shall be collected or received in payment of taxes or license due as hereafter assessed, except that coupons and script made receivable for taxes on the face thereof shall be receivable for all taxes except the bond tax." (Special Laws of 26th Leg., chap. 17, p. 191.) Under this provision of the city charter it is clear that the city council were not authorized to pass an amendment making these paving certificates receivable for taxes levied to secure funds to discharge the bonded indebtedness of the city, and if the ordinance authorizing the receipt of said certificates in payment of city taxes can be construed as including the special taxes above mentioned, it is to that extent void.

If the exception in this provision of the charter had been omitted,

we would not, in view of the requirement of our Constitution that, when a city creates a debt and issues bonds therefor, it shall make provision for the levy and assessment of a sufficient tax to provide a sinking fund for the payment of the bonds at maturity, and a fund for the payment of the interest as it accrues thereon, and in view of our statutes for the protection and safeguarding of this fund, hold that a statute which, in general terms, authorized a city to make its evidences of indebtedness receivable for taxes was intended to apply to special taxes of the kind mentioned. The bonds are payable in current money, and the mandate of the Constitution requiring the city to provide a fund for their redemption would not be complied with if the city received, in payment of the taxes levied to create such fund, anything other than current money, and any statute authorizing the payment of such taxes otherwise than in current money would, in our opinion, be contrary to the Constitution of the State. To permit taxes of this kind to be paid in warrants or other evidences of indebtedness due by the city would greatly impair, and might partially or wholly destroy the fund made sacred by our Constitution and laws to the payment of the bonds issued by the city, and thus prevent the discharge by the city of its obligations to its bondholders. Any legislation which might produce such results would seem to be obnoxious to the provision of the Constitution of the United States which forbids a State to pass any law impairing the obligation of contracts, as well as to the provisions of our State Constitution before mentioned. The city, as trustee for the bondholders in the collection of the taxes levied to discharge the indebtedness evidenced by the bonds, could interpose any objection to the validity of the ordinance making the paving certificates receivable for taxes which the bondholders might interpose, had they been parties to the suit. (City of Tyler v. Tyler B. & L. Assn., 11 Texas Ct. Rep., 48.)

There having been no power in the city council to authorize the city collector to receive either the paving certificates or the warrant issued to John S. Stewart in payment of taxes levied for the purpose of raising funds for the payment of the bonds of the city, it follows that the settlement made with the defendant in 1902, in which said certificates and warrant were accepted in payment of such taxes, was properly set aside by the trial court. That settlement can not be held void for one purpose and valid for another, and it would be manifestly unjust and unfair to defendant to release the city therefrom and yet hold her bound thereby; nor can it be held that by accepting the terms of said settlement the defendant, by implication, admitted that she owed the city $4,000 in taxes. The agreement to pay $4,000 in taxes was made in an effort to compromise the conflicting claims between herself and the city as to the amount of taxes due by her, and was conditional upon the acceptance by the city of the certificates and warrant in satisfaction of its claim. Under well-settled principles of law an offer made in an effort to compromise conflicting claims is not admissible in evidence against the party making it, and there is no merit in appellant's assignments which complain of the ruling of the trial court upon this question. (Railway Co. v. Ragsdale, 67 Texas, 27.)

The settlement made in 1902 being thus wholly eliminated from the case, the city, in its suit for the collection of taxes, was required to al-

Iege and prove facts showing *prima facie* a valid levy and assessment of the taxes claimed, and that they were due and unpaid. Under the charter of the city this proof could be made by the introduction in evidence of the assessment rolls, or of a statement made from said rolls, signed and certified to by the city assessor and collector. (Special Laws, 28th Leg., chap. 20, p. 107.) The city was unable to produce this statement for the reason that the collector, having made the settlement in 1902, before referred to, would not certify that any taxes were due. The rolls were offered in evidence, but defendant contends that they were not sufficient under the above-mentioned provision of the charter to make out a prima facie case against her, because they showed that the taxes appearing thereon as having been levied and assessed against her had been paid. This contention can not be sustained. The entry on these rolls, showing the payment of the taxes, was shown to have been made under the mistaken belief that by the 1902 settlement said taxes were paid, and that settlement being void, the entry of payment made upon the rolls was likewise void, and no more affected the admissibility of the rolls in evidence, nor their probative force, than it did the liability of the defendant for the unpaid taxes.

The petition alleges that the several lots owned by defendant in block number 256, in the city of Houston, upon which taxes are alleged to be due for the years 1881, 1883, 1885, 1895, 1897 and 1901, were not assessed separately, but in bulk, and that the same were so assessed by the owners for years prior and subsequent to those named. We do not think the defendant's exception to the petition on the ground that it showed an illegal assessment should have been sustained. Unless the several lots of the taxpayer are used together for one purpose, and as one piece of property, he is entitled to have each lot assessed separately, but it has been uniformly held that if the owner renders the property in bulk he is estopped from claiming that such assessment was illegal. (Harris v. City of Houston, 21 Texas Civ. App., 432; Turner v. City of Houston, 21 Texas Civ. App., 214; McCombs v. City of Rockport, 14 Texas Civ. App., 560; Guerguin v. City of San Antonio, 19 Texas Civ. App., 98.)

In the cases cited the bulk assessment complained of was for years in which the property was rendered by the owner, but we think the same principle should apply when the city, in assessing unrendered property, adopts the rendition previously made by the owner, and we so held in the case of Railway Co. v. City of Galveston (33 Texas Civ. App., 384, 8 Texas Ct. Rep., 372.) Since 1897 the charter of the city of Houston has contained the following provision: "Any delinquent taxpayer shall have the right to plead in any court, and to rely upon the statutes of limitation of four years in any suit for taxes alleged to be due the city of Houston." The power of the Legislature to fix a period of limitation to suits by a city for the collection of taxes is unquestioned, and the above provision of the charter of the city of Houston, except as it applied to suits pending at the time it was passed, and with the qualification that a reasonable time would be allowed the city in which to institute suits for taxes due prior to its passage, has been expressly upheld. (Ollivier v. City of Houston, 93 Texas, 201; Link v. City of

Houston, 59 S. W. Rep., 566; Link v. City of Houston, 94 Texas, 378, 60 S. W. Rep., 664.)

This suit was brought in 1902, and, as before stated, the charter provision fixing four years as the limitation to suits by the city for the collection of delinquent taxes was passed in 1897. Under these facts no issue of whether the city had had reasonable time after the passage of the charter to bring suit for taxes due at the time the charter was passed was raised, and the trial court should have held plaintiff's suit barred for all taxes due four years prior to the filing of the petition.

Neither of plaintiff's pleas in avoidance of the defendant's plea of limitation alleged facts sufficient to suspend the running of the statute. The fact that John S. Stewart, the son and general agent of the defendant, was attorney for the city from 1892 to 1900, and as such attorney failed to bring suit against the defendant for the recovery of taxes due by her to the city, could not estop defendant from pleading the statute of limitation. There is no allegation of fraud or collusion between the defendant and the city attorney. The city was charged with notice of the fact that the taxes were due, and suits were not brought, and it was not prevented by any act of the defendant or her said agent from bringing suit for the taxes due it by defendant. The plea that the application of the statute of limitation would affect the rights of the bondholders, who are not parties to this suit, is equally without merit. As before stated, the city, in all matters relating to the collection and preservation of the fund provided for the payment of its bonded indebtedness, is the representative of and trustee for the bondholders, and the right of the bondholders against the taxpayer must be enforced through the city. When the right of the city to enforce the collection of the tax becomes barred, that right is necessarily barred against the bondholders.

In her plea in reconvention the defendant claims against the city a commission of ten percent on numerous judgments obtained by John S. Stewart for the city during the time he was city attorney. Attached to this plea was an exhibit giving the style and numbers of the cases, and the dates and amounts of the various judgments. The defendant also pleaded the ordinance of the city under which said commissions were earned, and by its provisions such commissions were due when the judgments were collected. Such being the state of the pleading, the plaintiff excepted specially to the plea in reconvention because it failed to show when the judgments upon which the commissions were claimed were paid. This exception should have been sustained. Plaintiff was entitled to have the plea show whether or not the claim, or any part of it, was barred.

While upon this subject we will dispose of the contention of defendant that, the commissions claimed having been earned under an ordinance or resolution of the city fixing the salary and fees of the city attorney, the suit for said commissions was founded upon a written contract, and would not be barred until four years after the cause of action accrued. This ordinance can not be regarded as a contract between the city and the city attorney under which the services for which the defendant claims compensation was rendered, but it was a general law of the city fixing the salary to be attached to the office of city attorney,

and regulating the fees to which such officer should be entitled. We think it clear that the fact that commissions claimed by an officer were earned under a general law fixing the compensation for the services rendered does not make the suit for such commissions one upon a written contract, and the trial court correctly held that the two years statute of limitation applied to defendant's claim for said commissions.

The charter of the city of Houston, passed in 1897, provides that: "in any and all suits by the city of. Houston for the collection of taxes due it the city attorney shall be entitled to a fee of five percent of the amount of the tax, which five percent shall be taxed as costs against the property on which the tax is due." The resolution of the city council fixing the salary and fees of office attached to the office of city attorney was passed in 1898, and is as follows: "The city attorney shall receive an annual salary of $900, and shall be allowed a commission of ten percent on all sums collected by him for the city when said sums of money are collected by reason of the institution of suit in court to enforce the collection of same for taxes prior to 1897, such percentage, however, only to be paid on the amounts actually collected, and only as the same are collected. He shall be allowed a percentage of five percent on the collection of taxes for the year 1897, and years thereafter, as provided by charter of the city of Houston, all other fees to be turned into city treasury."

The provision of the charter above referred to manifestly had for its object the fixing of costs and penalties which might be charged against the property of the delinquent taxpayer, and we do not think it should be construed as fixing the amount the city was authorized to pay the city attorney as compensation for his services in bringing suit against delinquent taxpayers. But be this as it may, this statute can not be given a retroactive effect so as to charge the property of delinquent taxpayers with an additional five percent on the amount of taxes due prior to the passage of the statute, and we think it clear that the city was free to make such compensation to its city attorney as it thought just and fair for his services in collecting taxes due prior to 1897, and the resolution above quoted allows a commission of ten percent only on taxes due prior to 1897. We think, under this resolution, the city attorney was entitled to his commissions on taxes paid the city after he went out of office on judgments obtained by him, and if the city, without his consent, arbitrarily released a portion of such judgments, or if it purchased any of the property in satisfaction of the judgment against it, it would be liable for the full amount of the commission.

It is true that, under the terms of the resolution, the attorney is only entitled to commissions on the amount collected, but we do not think this should be construed to mean only on money actually received by him. It was the evident intention of the city council, in passing this resolution, to compensate the attorney for his labor in enforcing the payment to the city of the amount due it, and while the city was not liable to him until it had actually received the money, or the judgments therefor were otherwise discharged, it could be of no consequence to the city whether the money was paid directly to it or to the attorney, or paid before or after the attorney's term of office expired. It is not claimed that the succeeding attorney performed any services in collecting these

judgments, and no issue as to the respective rights of successive officers is involved. (James v. Turner, 78 Texas, 243; Riley v. Smith, 73 S. W. Rep., 54; Bright v. Hewes, 18 La. Ann., 666; Atchison v. City of Owensboro, 71 S. W. Rep., 869.)

We are also of opinion that the attorney would be entitled to a pro rata share in the commissions due on judgments collected by the city in suits which had been brought by him, but were not decided at the time he went out of office. This is a question of some difficulty, and there is much force in the contention that the right of the attorney for commissions in all suits undisposed of at the time his term of office expired passed to his successor, but in the absence of a statutory rule on the subject we think it more equitable to hold that such retiring officer would be entitled to receive such proportion of the commissions as the services rendered by him would bear to the entire services performed by himself and his successor. (City of El Paso v. Ashford, 3 Texas Civ. App., 378.) The trial court took this view of law, and we think his ruling should be sustained. If the city deems it necessary for its protection, it can make the succeeding officer who obtained the judgments on which the commissions are claimed a party in order that the judgment rendered in this case will conclude him.

The warrant for $1,675 issued to John S. Stewart was not shown to have been issued as a part of the compromise settlement made between defendant and the officers of the city, but, on the contrary, it was admitted that the amount for which it was issued was due John S. Stewart by the city of Houston at the time of its issuance. The warrant is regular upon its face, except that it purports to be signed by the assistant auditor instead of the auditor of the city. It is not shown what the powers of the assistant auditor were, but no question is made as to the fact that there was such an officer. Upon this state of facts we must presume that the assistant auditor was authorized to act in the premises, and the warrant must be held valid. The fact that the signature of the assistant auditor appears across the face of the warrant, instead of at the bottom, does not affect the question. This is well settled.

It was clearly competent for the plaintiff to show by the city assessor that the rolls offered in evidence were the assessment rolls of the city, prepared and kept in the assessor's office, and it was not necessary, in order to render this testimony identifying said rolls admissible in evidence, to show that they had been prepared in accordance with the requirements of the city ordinance. Any objection to the manner in which the rolls have been prepared should have been made to their introduction in evidence, and not to the testimony of the assessor identifying them as the records of his office.

Appellant's several assignments of error complaining of the ruling of the trial court in sustaining objections to this testimony must be sustained. For the purpose of proving the passage and publication of certain ordinances of the city of Houston pleaded by plaintiff it offered in evidence two printed pamphlets. Upon the cover of one of these pamphlets the following endorsement is printed: "The City Charter of the City of Houston, together with the Revised Code of Ordinances Prepared by Direction of the City Council, and Adopted by Resolution

on the 27th day of December, 1886." Upon the cover of the other pamphlet this endorsement is printed: "Revised Code of Ordinances of the City of Houston, Harris County, Texas, Compiled and Published by Order of the City Council in Compliance with Section 34, or the City Charter Adopted by the City Council by Ordinance Adopted November 11, 1897." The objection of the defendant to the introduction of the ordinances appearing in these pamphlets on the ground that such pamphlets did not purport to have been published by authority of the city council was sustained. The trial court erred in this ruling. The precise question was before this court in the case of Railway Co. v. Washington (63 S. W. Rep., 538), and we held that the pamphlets did purport to have been published by authority of the city council, and were admissible as prima facie evidence of the passage and publication of the ordinances therein contained. The opinion above mentioned is referred to for a more extended statement of our views upon the question.

Under the provision of the city charter making the tax rolls or a certified statement from said rolls signed by the city assessor prima facie evidence "that the tax on the property is due, and that the facts stated therein are true, and that all prerequisites required by law pertaining to the levying and assessing of the tax on property on which the suit is brought for the taxes due have been complied with," the city was not required to do more than introduce the tax rolls; and unless the defendant could then show that said rolls were illegally prepared, or should show that the prerequisites of the levy and assessment of the taxes had not been complied with, plaintiff's case would be made out for the taxes shown to be due by said rolls.

The trial court has authority under the statute to apportion the costs in any case if good cause for not following the ordinary rule exists, but the reason for so adjudging cost must be stated in the record. (Rev. Stats., art. 1438.)

We believe this disposes of all the material questions presented by the record, and those assignments which present questions not passed upon are overruled because, in our opinion, the questions therein presented are not material to any issue in the case.

For the errors before indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*