HIGHLAND PARK INDEPENDENT
SCHOOL DIST. v. REPUBLIC
INS. CO.

No. 13191.

Court of Civil Appeals of Texas. Dallas.
Feb. 6, 1942.

Rehearing Denied May 15, 1942.

Claude D. Bell, R. M. Vaughan, and J. W. Hassell, all of Dallas, for appellant.

W. H. Shook and J. L. Shook, both of Dallas, for appellee.

YOUNG, Justice.

This further suit between the parties is for back taxes, following assessment proceedings on alleged unrendered personal property for the years 1923 to 1931, inclusive. The Insurance Company reserves are thus sought to be back-taxed; consisting of items and amounts that are fully

described and discussed in previous appeals: 57 S.W.2d 627 (El Paso, writ refused); 129 Tex. 55, 102 S.W.2d 184 (Sup. Ct.); 123 S.W.2d 784 (this Court).

In a jury trial, at close of testimony, the court sustained defendant's motion for instructed verdict, refusing plaintiff's similar motion and requested issues subject thereto. Judgment was rendered accordingly, followed by plaintiff's appeal. The trial court indicated no particular grounds for its ruling (none being required), but same was obviously based on one or more of the following defenses, here urged by defendant as counter propositions, viz: (1) School districts have no inherent power to levy and collect taxes without an election authorizing same, and plaintiff not alleging and proving that an election was ever held, a defendant's verdict was inevitable as a matter of law; (2) the power of an independent school district to back-assess on personal property is derived from, and limited to, the authority conferred on the State and County under Art. 7208 R.S., which prohibits the back-taxing of such property except "two years past"; (3) a tax assessor has no right during the current year to reject the rendition tendered by the taxpayer, and make an ex parte assessment. Similarly, an attempt by a subsequent assessor to reject the renditions tendered by the taxpayer, currently and in previous years to former assessors, would be void; all such renditions having been accepted annually by the tax officer, approved, equalized, and resulting taxes fully paid; (4) the back assessment was made without notice to defendant, either by the assessor or the Equalization Board; hence was void as not in accordance with law, and a denial of due process to defendant under both State and Federal Constitutions, Vernon's Ann.St.Const. art. 1, § 19; Const.U.S. Amend. 14; (5) the back assessments were void, no property being omitted from the original assessments, in this: That for each of the years sued on, the aggregate value of all of defendant's property was set forth in its rendition. These values were sought to be reduced by deducting its real estate (separately taxed) and by the elimination of other non-taxables not here contested. In addition, the gross valuations in each rendition were then sought to be reduced by the amount of defendant's debts and liabilities; and when plaintiff's back assessment was made on reserves (shown in renditions as legally deducted), it was an assessment on defendant's liabilities and debts owing by it, and not on money or property owned by it. Wherefore, plaintiff's action must fail because no property or money owned by defendant has been back-assessed.

The above is deemed a fair summary of the Company's major defenses and obviates the necessity of particularizing its other counter propositions.

Quite essential to a study of the present controversy are the facts and points that were at issue in the preceding litigation; the Company asserting in all prior suits its right to deduct from its rendition sheets of total personal assets (submitted annually for taxation) the said reserves, as "indebtedness" under the language of Arts. 7147 and 7163 of the Tax Statutes, Title 122. The first case above cited related to 1926 and 1927 school taxes, and was decided by the El Paso Court January 26, 1933, on which, application for writ of error to the Supreme Court was refused. There, according to Judge Higgins, no dispute existed as to the listing of defendant's gross assets or the valuation thereof. The Company had tendered its renditions to the tax collector, deducting the named reserves as debts. The collector rejected same and made an ex parte assessment, which listed the reserves as taxable. Though the assessor's rendition was later approved by the Commissioners' Court, sitting as a Board of Equalization, it was ruled a void assessment perforce of noncompliance with Arts. 7185, 7206, 7211 and 7214 of the statutes; the court holding that the only difference between the parties was one of valuation, or "as to the true value of defendant's assets." In this connection, the court said: " * * * If the deductions claimed by defendant on its listing were not properly deductible, the commissioners' court had the authority to correct the defendant's listing (Articles 7206 and 7218) by eliminating same and thereby increase the valuation of its taxable assets. Ferguson v. Steen, Tex.Civ.App., 293 S.W. 318." [57 S.W.2d 631.] For the two years, however (1926, 1927), defendant paid in and the plaintiff's assessor accepted the amount produced by the Company renditions.

The second appeal involved school district taxes for the year 1933, the Company tendering to plaintiff formal rendition of all personal property, again deducting therefrom as "indebtedness" the following

claimed liabilities: Reserve for unearned premiums, $1,542,532.05; for unpaid losses $125,026.56; for taxes $115,120; for reinsurance balances $51,594.37. Plaintiff's assessor took no exception to this rendition, as provided by Art. 7211, or affirmative steps required by Arts. 7208 and 7218, but his own formulation of a new assessment (which included above reserves as assets) was disregarded by the Equalization Board. This body then had only to consider defendant's aforesaid rendition sheets which show *no personal property subject to taxation*. The Board, however, upon hearing, fixed a substantial valuation upon said personal property, which was accepted by the Insurance Company, and the assessment approved. The School District then sought to discharge its assessor and Board, appoint a new official and reviewers, to the end that defendant's valuations be increased to the amount of its own assessment. Thereupon, defendant filed suit for injunctive relief; and upon trial to the merits, the action of the original Equalization Board was decreed final. The prior injunction was then made permanent, requiring the District to desist from further efforts at reassessment and accept the taxes tendered on the basis of the findings of the first Equalization Board. In the Supreme Court (Opinion by Judge German, January 20, 1937), the action of the said Equalization Board was held final as to values, and that, in absence of statutory steps by the assessor, defendant's rendition was the only basis for assessment of the tax; also holding that Art. 5057a, Vernon's Ann.Civ.St., authorizing a deduction of the reserve therein mentioned, was constitutional. The trial court's judgment against the District, permanently enjoining it from again attempting to assess taxes for the year, and requiring it to accept the tendered sums for 1933 taxes, was affirmed. Judge German went further and held (unnecessary to the precise issues before the Court, we think, but to be followed as a pronouncement of our Supreme Court) that the deduction of the other reserves in defendant's inventory sheets was a failure to render same for taxation; that

such items constituted omitted, or *unrendered* property, which was not properly before the District Board, and whose action in deducting them was not final. This extra holding was in direct conflict with that of the El Paso Court (first appeal), in that, under similar circumstances (a rendition by the Insurance Company disclosing its total assets, but deducting the reserves), Judge Higgins had ruled that the true issue was simply one of *valuation*, which the Board had final jurisdiction to settle after statutory procedure. Arts. 7206–7212.

The third appeal (Opinion by this Court November 26, 1938) was over defendant's personal taxes for the current year 1934. The issues in that case simply concerned, (1) the effect of defendant's tender ($1,-220.64) as in full of its tax liability, and (2) questioning the right of the District assessor to increase defendant's valuations by the three reserves therein named, as well as the Equalization Board's approval of same as taxable items. The Board having followed the statutes, Arts. 7206–7212, we merely held that their action was final; the Company's remaining contention relative to Art. 5057a, discussed in the opinion, having already been determined by the Supreme Court, 102 S.W.2d 184, supra.[1] (See footnote).

The present suit, instituted May 7, 1937, alleged that defendant had failed and refused to render for taxation described amounts of personal property during the years 1923 to 1931; and an assessment was made by its assessor, back-taxing defendant through such period at the rates applicable to the respective years. This action was taken January 30, 1934, as a supplement to the current assessment, was approved by its Equalization Board December 31, 1934, and aggregated more than $95,000, including penalties and interest. Defendant was not given notice of the supplemental assessment, either at the time the assessor ascertained the taxability and valuations of the so-called unrendered property, or when the same was approved by the Equalization Board and placed on the tax rolls. The School District, by this

[1] The opinion of this Court (123 S.W. 2d 784, 793, Syl. 17–18) to the effect that Art. 5057a exclusively controls tax assessments for fire insurance companies is in conflict with the Supreme Court's construction of the statute, and is withdrawn. Under the express terms of Art. 5057a, the property of such companies, other than the unearned premium reserve there exempted is to be "assessed as other property"; making Arts. 7147 and 7163 available to the extent of such further deductions as the owner may be entitled.

procedure, sought, in effect, to back-tax all the defendant's reserves (deducted in its renditions as liabilities through the years), except that after 1927, when Art. 5057a became effective, the unearned premium reserve was admittedly exempt. For each of the years sued on, defendant had made its renditions, treating its reserves as already indicated, on which it paid current taxes of approximately $74,-000, holding official receipts therefor. After 1928, the District had its own assessor; the Dallas County assessor having theretofore performed these duties as provided by law. Art. 2792.

■■■ In support of the court's peremptory instruction, appellee earnestly argues that the District failed to make a prima facie case entitling it to recover any sum whatever, in the absence of express pleading and proof of a prior election, i. e., a majority vote by the District property owners, authorizing a tax as a predicate to a lawful levy; Art. 7, § 3, State Constitution, Vernon's Ann.St. Cited as directly in point, are: Crocker v. Santo Consol. Independent School Dist., Tex.Civ.App., Eastland, 116 S.W.2d 750, and Wingate v. Whitney Indep. School Dist., Tex.Civ. App., Waco, 129 S.W.2d 385. Appellee did not specially except to the so-called defective pleading, or assert the fact of no election (if there was none) as an affirmative defense. Its general demurrer and denial, also the reiterated objection to plaintiff's exhibits as inadmissible because of no showing "that plaintiff had the right to levy or assess the purported or any other taxes for the year involved," are relied on as wholly sufficient to raise the point and thereby support the court's subsequent action. Art. 7328.1, Vernon's Ann. Civ.Sts. (available to school districts in delinquent tax suits on personal property), sets forth in detail the allegations necessary to such petitions. The pleading in question appears to be well within the terms of Subd. (d) thereof, the statute only requiring the general statement: "(d) That all said taxes were authorized by law and each political subdivision in whose behalf this suit is brought was legally constituted and authorized to levy, assess and collect the same and all of said taxes were duly and legally levied and assessed * * *." See Corbett v. State et al., Tex. Civ.App., 153. S.W.2d 664.

■■■ As to proof, plaintiff introduced all assessment lists, rolls, etc., constituting its delinquent tax records, which would appear to comply with the requisites of a prima facie case under pertinent statutes, viz: Arts. 7321, 7326 and 7336, Vernon's Ann.Civ.St. These statutes, though particularly relating to tax suits on land, obviously comprehend proceedings against all property becoming tax delinquent under said Chap. 10 of Title 122 on Taxation. They are available to school districts when invoked; Arts. 1060a, 7337 and 7343 Vernon's Ann.Civ.St. From a study of this phase of plaintiff's case, we think the burden shifted to defendant of establishing as an affirmative defense that the prerequisites of a lawful levy did not exist; Dill v. City of Rising Star, Tex.Com.App., 269 S.W. 769; City of Houston v. Stewart, 40 Tex.Civ. App. 499, 90 S.W. 49. Further discussion of the subject is unnecessary, in view of our conclusion shown below that this cause should be remanded for another trial, where a like situation may not arise.

Appellee's second general counter proposition in support of the court's judgment is that the authority of an independent school district to back-assess personal property is derived from and limited by the State and County, Art. 7208, which Article merely confers a power to so assess for "two years past." Relied on as deciding the question, and therefore controlling, are State v. Cage, Tex.Civ.App., Ft. Worth, 176 S.W. 928, and certain statements of Judge German on the second appeal (102 S.W.2d 184), which will be later quoted. Plaintiff's suit is based on Art. 1047, Ch. 5, Title 28, of the cities' and towns' authority to back-assess; and underlying defendant's argument on the sole applicability of Art. 7208, is its consistent position that the privileges of the city and town statute (Art. 1047) are not, by clear legislative intent, extended to school districts in actions such as this.

■■■ All provisions of the State and County laws on taxation, of Title 122, R.S., are available, so far as same may be applicable, to school districts; Arts. 1060a, 7337 and 7343; the latter Article, referring to delinquent taxes, uses the additional language, "and when invoked." Similarly, the availability of the town and village assessment system to school districts has long been authorized by Art. 2791, R.S. Through uniform judicial construction, this reference statute has been held to include Chap. 5, Title 28, on Taxation; Blewett v. Richardson Independent School Dist., Tex.Com.

App., 240 S.W. 529; McPhail v. Tax Collector of Van Zandt Co., Tex.Civ.App., 280 S.W. 260; Pyote Independent School Dist. v. Dyer, Tex.Com.App., 34 S.W.2d 578; and see last appeal (123 S.W.2d 784) where the question is fully discussed.

In State v. Cage, supra, cited as limiting appellant to Art. 7208, the action was by a county attorney suing for state and county, as well as for school district taxes; all assessments having been made by the county (not district) assessor.

It should be here stated that, to all defenses of limitation (two and ten years), plaintiff District has "invoked" the applicable provisions of Art. 7298, Vernon's Ann. Civ.St., reading: " * * * no suit shall be brought for the collection of delinquent taxes of a School District * * * unless instituted within ten years from the time the same shall become delinquent."

But appellee points out that the Supreme Court holding of 1937 (102 S.W.2d 184, 188) expressly limits plaintiff's procedure for taxing its "reserves" to state and county laws. Judge German's language in this connection was that, "If the reserves claimed by plaintiff were illegally deducted, the result was exactly the same as if they had never been rendered at all. They would constitute unrendered property, and *articles 7208 and 7218* immediately became applicable to them, and furnished a proper method of subjecting them to taxation." (Italics ours.) We cannot construe this statement to mean that the indicated statutes, and none other, were available to a school district in an effort to back-tax; but was suggested by Judge German as a method adequate to the situation there involved. Beyond this, we cannot assume that the Supreme Court thereby intended to unsettle the pre-existing stare decisis.

It is urged that the back assessment was ex parte in nature and therefore invalid, in that defendant had no notice of the various District transactions whereby the reserves went on the delinquent tax rolls, and upon which these additional taxes are claimed. To this, plaintiff answers that no injury could possibly result from lack of notice, the assessed items appearing on defendant's own rendition sheets and financial statements in terms of money—the standard of all tax values.

Preliminary to a discussion of the question thus raised, the following background must be kept in mind: (1) we find no evidence of fraud practiced upon any County or District assessor by defendant in making renditions during the respective years, or concealment of these reserves as omitted property; the Company simply showing same as indebtedness or debts, and deductible from credits on annual rendition sheets which, in turn, were regularly approved and equalized by the District officers; and on which it paid current taxes during the nine years in suit; (2) in the first appeal, the matters decided were, that defendant, for the years 1926 and 1927, had made full disclosure of its total gross assets, the controversy there extending merely to a true valuation of defendant's personalty; i. e., whether the total thereof should include the reserves (a decision of the Equalization Board thereon being final); (3) it was not until 1937 that Judge German, on second appeal, held the deduction of defendant's reserves (as liabilities) in its 1934 tax rendition, constituted a failure to render same for taxation, hence never were properly before the Equalization Board; and that reserves, not exempted by Art. 5057a, could be assessed by the tax officer "as other property."

Under above Supreme Court pronouncement therefore, the District officer, in assessing these reserves as other property, was required to allow deductions for so much thereof as were debts (Art. 7147); and give due consideration to Art. 7163, providing that "No person shall be required to list or render a greater portion of his credits than he believes will be received or can be collected, * * *."

█ The ex parte assessment of these reserves in toto was a quasi judicial act of the tax officer, and due process would entitle the property owner to a hearing before the tax accruing thereunder became a settled liability against him; Cooley on Taxation, 4th Ed. Vol. 3, § 1118; Millers' Mut. Fire Ins. Co. v. Austin, Tex.Civ.App., 210 S.W. 825.

█ The hearing just referred to will be afforded appellee upon remand and retrial of this cause; and will suffice for the hearing before the assessor, of which it was deprived.

Certainly the substance of defendant's trial amendment, and the testimony of Mr. Pierce, its Vice-President, that the reserves in all renditions were in the nature of liabilities or debts, raised the issue of, to what extent the disputed items were taxable; the

gist of the taxpayer's defense being that the value of his property was not ascertained as provided by law, and that the value assessed was in excess of its real value; State Const. Art. 8, § 1; Vance v. Town of Pleasanton, Tex.Civ.App., 261 S.W. 457; Town of Pleasanton v. Vance, Tex.Com.App., 277 S.W. 89.

■ Upon application of above Articles (7147 and 7163), any amounts found by the jury as excess, when deducted from the District assessment, would fix the true value of the reserves for taxation, as we construe the second appeal (102 S.W.2d 184). The assessor's ex parte appraisements are not void, as contended by defendant, where the taxpayer is later given full opportunity to assert his defenses. Art. 7329, Subd. 3; City of Wichita Falls v. J. J. & M. Taxman Refining Co., Tex.Civ.App., 74 S.W.2d 524, writ refused.

■ The jury findings of defendant's taxables would not be a revaluation of the reserves and a reassessment thereof by the court (thus encroaching upon the jurisdiction of the tax assessor and Board of Equalization); but, on the other hand, would constitute an equitable adjustment of defendant's assessment and taxes by mathematical process; State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076; Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S.W. 852; and defendant could not complain of no further hearing before the Equalization Board, because the balance of taxable property, if any be found by the jury, would necessarily comprise items and valuations already reflected in defendant's own rendition of total assets for the various years.

We consider the above a sufficient discussion of what now appear as controlling issues for the trial court.

Reversed and remanded.

## On Rehearing.

We have held that plaintiff's back-assessment (originally ex parte) is susceptible of validation by a court hearing, for which purpose this cause has been remanded. In such connection, it is quite obvious that the trial court is entitled to more definite guidance on all questions, both of fact and of law, that may generally appertain to the "law of the case" on another trial.

To this end, the composition of these four reserves, constituting almost entirely the basis of the District's claim, must be restated. They are: (1) Reserves for reinsurance, being aggregate of premiums due other companies for assumption of ceded risks; (2) reserve for unpaid losses, being amounts set up for liquidation of claims of which the Company had notice, carried as adjusted or unadjusted; (3) reserve for taxes, representing amount of tax charges due and owing on preceding year's business and property; (4) reserve for unearned premiums, consisting of amounts lawfully required to be available (Arts. 4928, 4682, § 7, 5036) for reinsurance of outstanding risks and policy cancellation demands.

■ Regarding reserves 1 and 2 above (for reinsurance balances and unpaid losses), if, in fact, they constitute unrendered property, as suggested by Judge German, 102 S.W.2d 184, 189, the District assessor had no discretion except to list them on his supplemental roll, "to be assessed as other property." The application of Art. 7147 to these reserves would involve a fact determination of, to what extent the same were existing debts as opposed to contingent liabilities, the term "indebtedness" meaning generally whatever one owes, or, in a purely technical sense, "that for which an action of debt would lie; a sum of money due by certain and express agreement * * *." Merriman v. Swift & Co., Tex.Civ.App., 204 S.W. 775, 776, writ refused. When, by analysis of said reserves, aforesaid indebtedness is ascertained and deducted, the balance thereof may be taxed in an amount arrived at by process of mathematics; i. e., calculated on the customary assessable percentage and tax rate for the particular year; the underlying principle being that, "Right to relief from tax assessments as unequal or denying due process of law in failing to give property owner opportunity to be heard is limited to excess over amount properly assessable on equality basis." City of Wichita Falls v. J. J. & M. Taxman Refining Co., Tex.Civ.App., 74 S.W.2d 524, Syl. 4, writ refused.

■ We conclude that taxes do not constitute an "indebtedness" within the purview of Art. 7147 R.S. "As the obligation to pay taxes does not rest upon any contract express or implied, or upon the consent of the taxpayer, a tax is not a debt in the ordinary sense of the word; although it is a liability or obligation, * * *." 61 C.J., Taxation, p. 70, § 4. Appellee's tax reserves are therefore assessable until

exempted by express reference in a debt statute such as Art. 7147.

The greater part of appellant's supplemental assessment is appellee's reserve for unearned premiums, back-assessed for the years 1923 to 1927, inclusive, when Art. 5057a became effective and authorized the deduction of such fund in assessing the personalty of fire insurance companies. Defendant Company was not notified by the District assessor in 1934 when this vast amount of additional property was subjected to the assessing process under review. Is the "court hearing" that will be afforded appellee on the assessability of these reserves, a sufficient substitute as due process for the official hearing before the assessor and board to which the property owner was entitled? This court, by majority ruling, concludes the question should be given an affirmative answer (the writer dissenting to this paragraph only, on grounds hereinafter shown). It is the opinion of the majority that the amounts making up the reserves in question were at all times a part of appellee's gross assets; and prior to the enactment of Art. 5057a, were no more than contingent liabilities of the Company in contrast to existing debts, and hence taxable. See Annotations, 13 A.L.R. 186, 78 A.L.R. 562; that it was not within the power of a county or district assessor to select or determine the subjects of taxation, such being a legislative function; as declared by Art. 7145, providing: "All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed."; and Art. 7147, defining personal property. Wherefore, the District assessor had no discretion except to list aforesaid unearned premium reserves in his process of assessing unrendered property, their taxable character being for determination by the trial court as a matter of law.

The item of $139,473, back-taxed by plaintiff, appears in defendant's sworn rendition of 1928 as "real estate tax paid other counties." If the quoted language is correct, it would indicate an amount already paid to other taxing bodies and jurisdictions, and not a reserve for taxes. Items of municipal bonds, $76,776.69 and $17,116.76, deducted in defendant's rendition for the years 1930 and 1931; also $75,427.25, described as "accrued interest uncollected" for the latter years, are back-taxed. Their taxability in this suit is likewise for determination by the trial court as a matter of law.

The foregoing is to be considered as supplemental to our original opinion above; and, consistent therewith, all motions filed on rehearing will be overruled.

YOUNG, Justice (dissenting in part).

My dissent follows a firm conviction that it was within the discretion of the District assessor, in determining the amount of said back-assessment, to consider unearned premium reserves as no part of defendant's property, for purpose of taxation; but instead, to recognize them as belonging to its policy holders for the protection, stability and satisfaction of their policies; 102 S.W.2d 193; that the trial court possessed no such discretion (State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076), hence the assessment was void to extent of the unearned premium reserves; a "court hearing" being an insufficient substitute as due process for the assessor hearing, of which appellee was deprived.

In this connection, the following general statements are pertinent: (1) The acts of the District assessor, in January, 1934 (to which the equalizing board's approval was a mere formality because of no issue on valuation), were judicial in nature, having the force and effect of a judgment followed by levy and sale. Arts. 7253 to 7273, inclusive (Art. 7328a, prohibiting summary sales for delinquent taxes, applying only to real estate); (2) the "hearing" referred to, which should have been given, contemplates an actual hearing on the real merits and not merely a formal one; Cooley on Taxation, 4th Ed., § 1116; and is not awarded as a matter of grace or favor; Central of Georgia R. Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, 12 Ann.Cas. 463; Tumulty v. District of Columbia, 69 App.D.C. 390, 102 F.2d 254-262; (3) an assessor is a public officer, Cooley on Taxation, Sec. 1053, clothed with quasi judicial powers in regard to listings and assessment of kinds and classes of property, possessing a fair discretion in the discharge of assessing duties; City of El Paso v. Howze, Tex. Civ.App., 248 S.W. 99, writ refused. His honest judgment on listings and valuations, based upon proven facts and reasonable grounds, is not subject to review; Atlantic

Pipe Line Co. v. State Tax Board, D.C., 12 F.Supp. 265; Templeton v. Pierce County, 25 Wash. 377, 65 P. 553; Northern Pac. R. Co. v. Pierce County, 55 Wash. 108, 104 P. 178; the same being equally applicable to boards of equalization and matters within their province. It is only upon an abuse of discretion on the part of the assessor or board, such as adopting arbitrary methods, acting fraudulently, or, in some other respect, failing to follow the taxing statutes, that courts of equity obtain jurisdiction; State v. Houser, Tex.Sup., 156 S.W.2d 968; Board of Equalization v. McDonald, 133 Tex. 521, 129 S.W.2d 1135, Syl. 1; (4) in this state, the powers of courts are severely limited regarding correction of irregularities in assessment or valuation; and extend only to cases where errors in tax methods can be eliminated by some mathematical formula. If the corrective procedure involves discretionary acts on part of the assessing agency, the findings of a court or jury cannot be substituted therefor; State v. Richardson, supra.

It follows in the case at bar that, if the hearing to which appellee Company was entitled called for an exercise of the assessor's discretion, a hearing before a court or jury would not suffice; thus rendering appellant's assessment, to such extent, a denial of due process.

Turning again to the so-called omitted property covered by plaintiff's blanket assessment for the years 1923 to 1931, inclusive, defendant's annual rendition sheets show that the items comprising same were reported as reserves or liabilities (same being grouped as 1 to 4, inclusive in above opinion on rehearing).

It will be noted that these reserves were wholly unrelated, except as they were denominated "liabilities" by defendant. No money or actual property of the Company was allocated or set apart to the extent of said amounts, but same were book entries, indicating that total assets had been offset by the claimed liabilities; and represented largely by Company investments in first mortgage loans, stocks and bonds. Plaintiff's back-assessment included the reserve for unearned premiums above mentioned, for the years 1923 to 1927, inclusive; when Art. 5057a was enacted.

As already stated, defendant had listed all four reserves in its sworn rendition sheets for above years, and (except for 1926-27), the county tax assessor and the commissioners' court, as the equalization board, had duly approved the listings and accepted taxes produced thereby, followed by regular receipts. Even for the tax years 1926-27 (subject of litigation discussed in 57 S.W.2d 627), amounts based upon the Company renditions were accepted by the assessor, in whose own official listing for 1927 the reserve for unearned premiums had been omitted; and there is evidence in this record indicating that the county officials had canceled and relinquished all further tax claims for these two years. Also, as an exhibit to defendant's pleading in the first suit, just above mentioned, was a letter from the Attorney-General to the Civil District Attorney of Dallas County, dated January 25, 1927 (prior to enactment of Art. 5057a), advising that a fire insurance company's reserve for unearned premiums was deductible as a debt under Art. 7147.

With particular reference to this statutory reserve, let us now turn to the back-assessment of January, 1934, to determine briefly what defendant Company could fairly have contended with respect to the deductibility of unearned premiums; and what action the assessor could lawfully have taken thereon, based on his honest judgment, and in exercise of full discretionary powers. Though Judge German, in 1937, had held this reserve not deductible under the debt statute (Art. 7147), yet I think an assessment compiled three years before was controlled, so far as applicable, by the opinion of Judge Higgins in 1933, 57 S.W.2d 627.

Legislation concerning fire companies, requiring segregation of unearned premiums when estimating profits, had been enacted in 1875 (Art. 5036); and by general law in 1927, such reserve had been made a statutory indebtedness, to be subtracted from total assets for tax purposes. Even long prior to 1927, the taxability of these funds had been gravely questioned, the contention being that they were generally deductible, the same as were like reserves of life insurance companies. In view of these considerations and of above background, I believe that a district assessor, in his 1934 back-assessment, subjecting further personal property to taxation, could honestly have judged that unearned premium reserves were not to be

1066

regarded as assets of a fire insurance company; and thereby, in his discretion, could have eliminated them in fixing the amount of the alleged omitted credits of defendant corporation. Certainly his action thus taken, after an assumed hearing in 1934, would not have been subject to judicial review, involving, if error, mere undervaluation of omitted assets; State v. Chicago, R. I. & G. R. Co., Tex.Com.App., 263 S.W. 249. The assessor's method in this respect would have been final, the District Board having no authority to supplement the former's lists; Davis, Tax Collector, v. Burnett, 77 Tex. 3, 13 S.W. 613; Ft. Worth v. Southland Greyhound Lines, 123 Tex. 13, 67 S.W.2d 354, 361.

Appellee Company was entitled to a hearing that comprehended the full discretionary powers of appellant's assessor regarding the taxability of unearned premiums. As has already been seen, defendant Company cannot be afforded such a hearing on retrial of this cause; thereby voiding plaintiff's assessment, in my opinion, to the extent of the particular reserve.

On Second Motion for Rehearing.

BOND, Chief Justice.

The supplemental majority opinion, of May 15, 1942, states that the application of Article 7147 to reserves for reinsurance balances and unpaid losses would involve a fact determination. We should have stated, and now hold as an addendum to said opinion, that said article only permits deduction of debts owing by the property owner from debts due him, and not from property generally. Rosenberg v. Weekes, 67 Tex. 578, 4 S.W. 899; Campbell v. Wiggins, 2 Tex.Civ.App. 1, 20 S.W. 730; Primm v. Fort, 23 Tex.Civ. App. 605, 57 S.W. 86, 972. Bonds, stocks, money and bank deposits, or any fund consisting of same, constitute personal property of a concrete form and not mere credits from which debts may be deducted. Texas Land & Cattle Co. v. City of Fort Worth, Tex.Civ.App., 73 S.W.2d 860; Guarantee Life Ins. Co. v. City of Austin, Tex.Civ.App., 165 S.W. 53, affirmed 108 Tex. 209, 190 S.W. 189; Kansas Mut. Life Ass'n v. Hill, 51 Kan. 636, 33 P. 300. In line with this holding, the opinion is corrected; motions for rehearing, presented by appellant and appellee, are overruled.