## NEDERLAND INDEPENDENT SCHOOL DIST. et al. v. CARTER et al.

### No. 2688.

Court of Civil Appeals of Texas. Beaumont.
July 12, 1934.

Rehearing Denied July 16, 1934.

John D. Rienstra, of Beaumont, for appellants.

Renfro & Keen, of Beaumont, for appellees.

WALKER, Chief Justice.

On the 31st day of January, 1934, in chambers on the ex parte presentation of their petition, the district judge of the Sixtieth judicial district of Jefferson county granted to S. R. Carter and twelve other taxpaying citizens of Nederland Independent School District of Jefferson County a temporary injunction restraining the school district and its officers from collecting any tax on their property in excess of the "amount justly due by reason of the rate established in said district for the year 1933, passed upon and calculated at the valuation to which the plaintiffs, and each of them, rendered their said property to said district." Plaintiffs prayed for certain additional relief on "final hearing" not involved in this appeal. The defendants' answer and motion to dissolve in no way controverted the facts alleged in the plaintiffs' petition, but consisted merely of general and special demurrers and pleas of misjoinder of persons and causes of action and of the insufficiency of the penalty of the injunction bond. The appeal is from a chambers order overruling the motion to dissolve. It thus appears that the only issue is whether or not appellees' verified petition stated facts sufficient to support the temporary injunction.

The facts alleged in the petition may be summarized as follows: Certain oil companies, the Texas Company, Sun Company, and Pure Oil Company, have large holdings in the school district. For a number of years there has been "a collusion and understanding and combine * * * on the part of said oil companies arbitrarily and fraudulently to run said school district, assess values, set the tax rate, elect the Board of Trustees, appoint and control the Board of Equalization, and to do such other acts that will give them, the said oil companies, and especially the Pure Oil Company, complete control over the affairs of the said school district for the purpose of furthering their own special interests and to escape their equal, just prorata part of taxation and to discriminate against these plaintiffs and cast upon them more taxes than the law and the Constitution of the state require." In fact, the said oil companies had accomplished the purpose of their "combine by having the property of the plaintiffs assessed at a value greatly out of proportion to its market value, while the property of the oil companies was assessed at a valuation greatly less than its market value. Certain officers of the oil companies were members of the Board of Trustees of the school district and through these officers, acting as trustees, the oil companies were able to accomplish the unlawful purposes of their combine." Thus "plaintiffs further represent that when a new man is nominated to run for school trustee in said district, they are informed and believe, and upon such information and belief allege the fact to be, that the Pure Oil Company officials pass the word along in such manner as to give their employees to understand that the man or men backed by the Pure Oil Company is the man or men that they are expected to vote for, and plaintiffs further allege upon information and belief that the Pure Oil Company placed a man at the polls and paid him a salary to solicit and influence votes for the candidate of the Pure Oil Company in said school election, all of which conduct and acts on the part of the said Pure Oil Company and other oil companies, plaintiffs say, is a part of an illegal scheme and plan, wilful and malicious and arbitrary and for the purpose of forcing these plaintiffs, and each of them, and all others similarly located and situated to pay more than their just prorata of equal and uniform taxation to said school district." Two members of the board of equalization of the school district knew nothing of land valuations and were forced to rely upon the testimony adduced before the board or upon

"advice" not based upon their personal knowledge. The board was controlled by its chairman, Dan Reinstra, and he was biased "in favor of the Pure Oil Company and is so connected and situated with them as to make it embarrassing to render or assess values against their wishes." While Dan Reinstra was serving as chairman of the board of equalization, he made the statement "that all he needed was the school rate and the budget; that he would set the values to make it balance; * * * that one of the reasons he was valuing these plaintiffs' property so high was that every time they went to sell a piece of property, they asked a high price for it and that he was going to value it according to the way they charged for it, regardless of the fact of what the piece of property might or might not be worth; * * * the said Dan Reinstra does not carry out the same rule of thumb in considering the prices charged for and the rendition for tax purposes on petroleum products." It was further alleged: "That Dan J. Reinstra, Chairman of the Board of Equalization, is in the insurance business and has the major part of the school insurance, and plaintiffs are informed and believe, and upon such information and belief allege the fact to be, that he has insurance connections with the Pure Oil Company and as a matter of fact is tied in with the Pure Oil Company in such a manner as to usurp and unjustly and unfairly and fraudulently assess values to the financial advantage of the Pure Oil Company and against the interests and rights of these plaintiffs, and each of them. All the plaintiffs who rendered their property for the year 1933 to said Nederland Independent School District, for taxation, rendered it in each instance at its fair cash market or at its true value as of January 1, 1933, thereafter, in June, 1933, the Board of Equalization of the Nederland Independent School District met and took under consideration the problem of raising. funds to meet the budget of the said school district for the year 1933–34 and beforehand compiled a book of values setting a value upon each acre of land and each lot located in said district, and this value was determined without taking into consideration the elements that constitute and make up the value of property, and the said Board of Equalization fraudulently and arbitrarily adopted a scheme of placing an arbitrary value upon each acre of land in said district and upon each lot in said district without reference to its actual value or its reasonable cash market value as of January 1, 1933, but placed such value upon it as would, when as-

sessed at the rate, produce budget and take care of delinquent taxes for said school district for the year 1933, which value was arbitrarily and highly excessive as to these plaintiffs, and each of them and the same was done by the Board of Equalization fraudulently and in pursuance of a scheme adopted by the said Board of Equalization to cast the burden of taxation on these plaintiffs and to permit certain classes of property especially those classes held and owned by oil companies, to go either tax free or valued at such a figure as to permit said classes of property to bear only a small portion of their just part of taxation, that is, the properties of the oil companies, including their lands, were rendered and accepted by the said Board of Equalization far below their actual cash market value or their true value as of January 1, 1933, so that under such a scheme and plan the Pure Oil Company especially as well as the other oil companies, would not and are not paying their just prorata part of equal uniform taxation as required by the laws and constitution of this state."

"Plaintiffs would further represent that the Board of Equalization fraudulently refused to consider in fixing the values of property belonging to these plaintiffs, the statements of the assessment and inventory, refused to consider the actual value in said report, refused to consider evidence with reference thereto and refused to consider other data and information given under oath at the hearing and arbitrarily assessed plaintiffs, and each of them, said properties at such a figure that it was so excessive as to show upon its face and as a matter of law that the Board of Equalization did not use its best judgment in arriving at the said values but as a matter of law was guilty of fraud, and that its acts and conduct in raising said values were a part of an unlawful scheme and a fraud practiced upon these plaintiffs, and each of them. Plaintiffs would represent that they were discriminated against by being landowners in that the Board of Equalization fraudulently, knowingly and in violation of the law and with the avowed purpose of casting a heavier burden upon these plaintiffs than the law requires in taxation matters exempted certain classes of property in said district and unreasonably valued other classes of property in that it is well known to the said Board of Equalization that the oil companies in said District, owned and held, subject to taxation in said district, money, personal property, including petroleum and its refined products and machinery, and this class of property was ren-

938

dered at less than its actual cash market value, thereby casting upon landowners in said district, that is, persons whose estates and holdings were primarily real estate, a burden and an unequal amount of taxation, to their injury. That such arbitrary and capricious increase of assessed valuations was made in pursuance of a definite plan of assessments for the valuation adopted by the said school district and in existence there for a number of years by which land values are figured and computed by an arbitrary and mechanical rule of thumb, starting from a certain point designated as central and all lands thereafter are zoned from said point, and in these zones, which are arbitrarily designated and fixed, figures and values are placed upon the lands in accordance with the zones and plan and purpose of raising a certain amount of money without any regard whatsoever to the true and actual value thereof, or the reasonable cash market value thereof, and because of such acts and conduct the property of these plaintiffs has been valued greatly in excess of the true market value thereof, as hereinbefore shown, and the tax upon plaintiffs' property would and will be enormously increased over the true and proper tax that should be assessed thereon had the true and legal valuation been placed upon said properties, and plaintiffs and each of them, say that these excessive valuations were known to be excessive to the Board of Equalization at the time they were placed thereon by the Board and were known to be highly excessive and fraudulent at the close of the testimony offered at the hearing on July 28, 1933. Plaintiffs would represent that under the Laws of the United States of America and the State of Texas, these plaintiffs, and each of them, are entitled to equal protection afforded to other citizens and corporations having and owning property within the limits of said school district subject to taxation and entitled in each instance to have their property assessed on the same percentage of actual value as property owned by other tax payers. Plaintiffs say the Board of Equalization of said district use a different method of arriving at the taxable values or fair cash market value of property in said district and assess the same on different percentages in some instances using 50% of the value of said property and lower; and in some instances probably a ratio of 80%, and in some instances and especially in the instance of these plaintiffs' renditions, the property is raised to 200 to 300% over and above the fair cash market value thereof. However, these plaintiffs are not thoroughly

familiar with the rule and method adopted by the said Board of Equalization and Tax Assessor, but the acts are of a nature as to deprive these plaintiffs and each of them of their property without due process of law and in violation of the Constitution of both the State of Texas, and the United States of America. Plaintiffs would further represent that in 1932, the Board of Equalization (Dan Reinstra was Chairman then) arbitrarily and without taking into consideration the values of property located in said district and without taking into consideration the elements that are determinative of property values ordered a cut of about 33⅓% in the valuations and in 1933 arbitrarily established the values of the various lands in the district at the same value as it was in 1932 without taking into consideration any of the elements that make up value of land or the real value of the property or the fair cash market value of said property, and this is reflected by various valuations set out in odd figures, such as a tract of land at $4008, an acre of land at $443, and for the year 1933, the said Board of Equalization did not determine the values as of January 1, 1933, as provided by the laws of this state and the constitution, but arbitrarily and without notice and without hearing evidence, placed values the same as they were for 1932, and those properties that were not rendered for that figure were automatically by the said Board of Equalization raised to that figure and valued at such for taxation purposes, as is shown by unrendered property and by the raise placed upon these plaintiffs, and plaintiffs, and each of them, say that such is the adoption of an illegal and wrong scheme or plan of valuation of property and is in violation and contravention of the statute and constitution of this state pertaining to such and the same is a part of a scheme or plan of said defendant to cast a higher and heavier burden of taxation upon these plaintiffs and other similarly situated than is required by law or constitution of this state of them, and defeats equal and uniform taxation and permits a certain select few to pay less taxation than their just prorata part of equal and uniform taxation. Plaintiffs would represent that the Pure Oil Company and the other oil companies holding and owning property in said district own property along the water front, being on the Neches River and what is known as the Sabine District, being one of the largest and finest waterways in the United States, and the property adjacent to this waterway and having a classification of water front property, such as is owned by the Pure Oil Com-

pany, is and was on the 1st day of January, 1933, of the reasonable cash market value from $7000 to $8000 per acre, and that the Pure Oil Company's property was highly improved and being put to such uses as industrial uses and water front uses at that time and prior thereto and notwithstanding this known value, the said Board of Equalization and the defendant is so influenced by the said Pure Oil Company, acting by and thru those in charge as that the valuation of that property was placed at the ridiculous sum of $83 per acre, which is far below its actual value or its cash market value, and is so out of line as to show that the Board of Education and the defendant, Nederland Independent School District did not act fairly and with its best judgment to equalize property values for taxation in said district but that the conduct of the defendant was such as to permit the said Pure Oil Company to escape almost entirely its part of taxation as required by the law and the constitution of this state and showing further that there exists some understanding, scheme or plan. Every oil company in said district, that is, their land is carried at the same figure, to-wit, $83 per acre, regardless of where it is located, regardless of its value and regardless of its classification. However, these plaintiffs allege this last statement upon information and belief and say that the reason it is alleged upon information and belief is that Mr. C. E. Gibson advised that it was a fact and at the same time refused to permit these plaintiffs, by and thru their attorney, to examine the public records in the Tax Assessor's and Collector's office, that is, we were not permitted to examine the renditions to determine if this is a fact, and the fact that the public records were withheld and denied inspection by these plaintiffs shows upon its face that the said defendant, Nederland Independent School District, is not seeking to equalize taxation but has some motive in withholding said records from these plaintiffs, notwithstanding they are resident tax payers in said district and entitled to inspect the records the same as any large corporation or any other person."

As a further and integral part of the scheme and plan to impose an unjust tax burden and to discriminate against the plaintiffs, it was alleged: "That the following are the renditions of these plaintiffs compared with the Pure Oil Company's rendition (the best they can) and to those of Dan Reinstra and other tax payers as set by the Board of Equalization, and in this connection plaintiffs would represent that they are handicapped in this

comparison in that Renfro & Keen are their duly elected and appointed attorneys to represent them in this case, and the Board of Trustees had notice of such appointment in writing, and notwithstanding such and notwithstanding that the rolls and renditions of the various tax payers of said district are public property in the hands and custody of the Tax Assessor, Mrs. E. A. Gibson, that when these plaintiffs' attorney called to investigate the rolls and renditions for the purpose of comparing the valuations, Mr. C. E. Gibson advised the attorney for these plaintiffs that the renditions would not be exhibited to him, and that said attorney would not have any right and would not be permitted to examine any rendition other than the rendition of the property owners represented by said attorney, and especially that they would not be permitted to examine the rendition then on file of the Pure Oil Company, and further stated that his orders came from Mr. R. L. Vernor, Superintendent of the Pure Oil Company and President of the Board of Trustees of the Nederland Independent School District, and therefore these plaintiffs are at a loss to compare, except in a general way, the renditions of these plaintiffs and the various oil companies and other tax payers of said district. Because of such refusal and high-handed conduct on the part of said Board of Trustees, these plaintiffs pray the court to be lenient with them in making these comparisons, and it thereby necessitates in many instances making the allegation upon information and belief, whereas it might otherwise be alleged as a fact after examination of the records."

The following allegations were made respecting the assessment of plaintiff Johnson: He owned in the district 13 acres of land, which was assessed by him at $3,800. The board of equalization raised this value to $6,766, approximately $520 an acre. At the same time the board accepted a rendition from the Pure Oil Company of certain lands sold to it by Johnson from the Johnson tract, at $83 per acre, though the Pure Oil Company had improved its tract "far in excess of any improvements that have or could be reasonably placed upon the remainder of the tract held by this plaintiff and designated as the Johnson Addition." It was further alleged as to plaintiff Johnson: "That he rendered his property at its fair cash market value, which is in excess of its actual value, as of January 1, 1933, or any time for six months prior thereto and that the raise and excessive value placed on it by the Board of Equalization is fraudulently, wilfully and arbitrarily done and is a part of a scheme and an un-

lawful plan and that said Board of Equalization did not take into consideration the ele-. ments that make up the value of this property and that the raise is so outrageous and exhorbitant as to show conclusively that it was fraudulently done and that a wrong scheme of valuation was used and that this plaintiff was wilfully discriminated against and that reasonable minds could not differ as to the question of whether or not the said Board of Equalization of said school district acted fraudulently and arbitrarily, and their acts and conduct in law amounts to taking property without due process of law and in violation of the Constitution that requires that taxation shall be equal and uniform." It was further alleged that Johnson duly appeared before the board of equalization and offered testimony that the rendition by him represented the true market value of his property; that the board received no testimony rebutting the testimony offered by Johnson, and the members of the board had no personal knowledge of the real market value of the property; that the board "wholly ignored said testimony and arbitrarily and without jurisdiction rendered its judgment sustaining the figures at which said Board had arbitrarily valued this property and refused to alter their said judgment or valuation in any manner whatsoever, all of which amounts to and is a fraud upon this plaintiff." In connection with the Johnson rendition it was further alleged: "That the real purpose of said Board of Equalization was not to value the property, at its true cash market value, that is, the property of this plaintiff, nor at its actual value, but was for the purpose of raising the budget and permitting the oil companies and a select few tax payers to escape their just pro rata part of equal uniform taxation; * * * that the judgment on July 28, by said Board of Equalization placing such excessive, unreasonable and discriminating values on said property is not supported by any evidence and is an obvious violation of the Laws of the State of Texas and the Constitution of the State of Texas and shows the adoption of a fraudulently wrong principle or method of arriving at the valuation of said property, and the application of such principle or method substantially injured the said plaintiffs herein, and each of said plaintiffs, and if followed out will force this plaintiff, and each of said plaintiffs, to pay an unjust part of taxation or more than their proportionate part of taxation according to the laws of the State of Texas, and the Constitution, which require that taxation shall be equal and uniform." Similar allega-

tions as to excess valuation were made as to the property of the other plaintiffs.

"Plaintiffs would further represent (that is all except M. G. Block, J. A. Carabin, A. J. Roy and Robert Bodemueller who did not render their property) that they stand ready, able and willing and here and now tender to the proper authority of said district, to-wit, the Tax Collector, the amount of taxes due on their said property in each instance according to the value as rendered by them which is the fair cash market value of the property, and the last four named plaintiffs represent that they are willing, able and ready to pay their taxes based upon a fair cash market value of their property, as set out herein, and these plaintiffs further represent in this connection that the said Nederland Independent School District, acting by and thru its officers in charge, will file suit or levy upon the property of these plaintiffs and sell or offer the same for sale to the highest bidder to satisfy the unjust, unlawful tax cast upon these plaintiffs by reason of such unjust, unreasonable and excessive valuations and schemes and plans as practiced by the said defendant and Board of Equalization and the Board of Trustees unless this Honorable Court issues its writ of injunction restraining the said Board of Trustees, the defendant, Nederland Independent School District, its Tax Assessor and Collector and Board of Equalization from collecting or attempting to collect said unjust tax or offering for sale or levying upon these plaintiffs' property or in any manner molesting them for the purpose of collecting said exhorbitant unlawful tax, and plaintiffs would represent that if this defendant is permitted to pursue said scheme and plan that a cloud will be cast upon the title of their property and a lien created against it and that they will suffer irreparable loss and that they have no adequate remedy at law and are entitled to equitable relief."

## Opinion.

◼ The foregoing statement summarizes and quotes from the petition of plaintiffs, which consumes 57 pages of the transcript. We are of the opinion that, on the allegations of the petition, appellees were properly granted the temporary injunction. Whether or not they are entitled to the relief prayed for upon final hearing—that is, that the temporary injunction be made permanent, the valuations of the board of equalization be set aside etc.— must be determined by the facts introduced in evidence upon the trial of the case on its merits. The only issue now before us is whether

or not the petition stated a cause of action sufficient to support the temporary injunction.

We overrule appellant's contention that the petition failed to state grounds for equitable relief. As against this proposition it was sufficient in the following respects: The facts alleged constituted a fraudulent method of arriving at the valuations of appellees' property which substantially injured them. Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493; Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756. The zoning method, as alleged in the petition, was in violation of the Constitution. Ogburn v. Ward County Irrigation Dist. (Tex. Com. App.) 280 S. W. 169. In the absence of fraud it is a general rule that the judgment of a board of equalization upon a particular assessment is conclusive (see the Druesdow and Rowland Cases, supra); but where the valuation is so excessive as to show that it could not be the result of an honest judgment, the courts may enjoin its enforcement, such as the valuation of Johnson's land at $520 per acre when the valuation of the oil company's land on property adjacent thereto and of equal value was fixed at $83 per acre. Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131. The petition was also sufficient to state grounds of equitable relief wherein it was alleged that the board of equalization had no actual knowledge of land valuations and, having heard testimony as to the value of plaintiffs' property, with no controverting testimony, wholly ignored all the testimony and grossly overvalued their property; where it is alleged that a combine and conspiracy existed among the oil companies to control the board of trustees of the school district and its board of equalization, to the end that appellees' property would be grossly overvalued and the property of the oil companies grossly undervalued, and that this conspiracy had been accomplished; and wherein it was alleged that the board of equalization took the valuations of previous years and arbitrarily reduced them upon a percentage basis without relation to the value of the property and without considering the circumstances that entered into the value of the property. The principles controlling this case were recognized and discussed by Judge Combs, speaking for this court, in Port Arthur Independent School District v. Baumer, 64 S. W.(2d) 412, to which we make special reference.

There was no misjoinder of parties or of causes of action. The allegations as to the specific renditions of the several plaintiffs were particular allegations in support of the general allegation of wrongful methods used by the board of equalization in assessing appellees' property.

Appellants state a correct legal proposition when they say that the petition must be construed most strongly against appellees. We recognized this principle in our conclusion that the petition stated a cause of action for equitable relief.

The sixth and seventh propositions are to the effect that the injunction restrained the collection of taxes in the amount of $1,266.90 and that the injunction bond was for only $2,500, being less than double the amount of the taxes enjoined. As appellants insist that a bond in the statutory amount should have been executed. it is our order that within ten days from the filing of this opinion appellees file such a bond with the clerk of the district court of Jefferson county, conditioned as required by law, and a certified copy thereof with the clerk of this court.

With this instruction, the judgment appealed from is in all things affirmed.