## NEDERLAND INDEPENDENT SCHOOL DIST. v. CARTER et al.

### No. 2868.

Court of Civil Appeals of Texas. Beaumont.

April 16, 1936.

Rehearing Denied April 22, 1936.

John D. Rienstra, of Beaumont, for appellant.

Renfro & Keen, of Beaumont, for appellees.

COMBS, Justice.

This suit was brought January 31, 1934, by thirteen property taxpayers against the Nederland Independent School District and its various officials, to enjoin collection of all taxes assessed against their respective properties for the year 1933 in excess of an amount calculated on the basis of the valuations at which said properties were rendered. The trial court granted a temporary writ of injunction, as prayed for, and upon final hearing made it permanent, except that it was developed on the trial that four of the complainants had not rendered their property for the year 1933, and these four were denied any relief and have not appealed.

Plaintiffs' petition was reviewed at some length by this court on an appeal by the school district from the order of the trial court overruling its motion to dissolve the temporary injunction. See Nederland Independent School District v. S. R. Carter et al. (Tex.Civ.App.) 73 S.W.(2d) 935.

So far as material to this discussion, the plaintiffs charge in their petition that the valuations at which they had rendered their respective properties were just and reasonable and represented the fair market value thereof as of January 1, 1933; that the valuations placed thereon by the board of equalization were grossly excessive and were arbitrarily and fraudulently made; that the board of equalization followed an illegal scheme in arriving at the valuations, in that the board arbitrarily agreed to assess the lands of oil companies at $83 per acre, regardless of their true value, and assessed property of the plaintiffs and others of a similar kind and character and of equal or less value at much greater valuations. They also alleged that the Nederland Independent School District and its officials were completely dominated by the Pure Oil Company and other companies, and that a conspiracy and combine existed between the school officials and the oil companies, the purpose of which was to enable the companies to escape payment of their just proportion of the taxes.

The trial was to the court. Findings of fact and conclusions of law were filed. The findings and conclusions are too extensive to incorporate in this opinion. Certain findings which we deem material were, in substance: That the board of equalization notified the plaintiffs of the proposed raises in their valuations and fixed a time for them to appear before said board; that pursuant to such notice the plaintiffs did appear before the board and:

(11) "That at said hearing the complainants, and each of them, submitted sworn evidence before the Board of Equalization at said meeting in which evidence witnesses were qualified as experts on land valuations within the school district and testified that the figures at which the property was rendered by each of the petitioners who rendered same represented the true value or reasonable cash market value of said land and premises as of January 1, 1933, and that the valuation to which the Board of Equalization proposed to raise said values was excessive and in excess of

the true value or the reasonable cash market value as of January 1, 1933, and that the valuation of other lands in the school district as carried by the Board of Equalization was below its true value or reasonable cash market value as of January 1, 1933."

(12) "That the Board of Equalization did not call any witnesses of its own choosing and did not produce any evidence as to the true value or reasonable cash market value of said lands as of January 1, 1933, and no evidence was offered contrary to or disputing the evidence presented by the petitioners."

(13) "That the Equalization Board of said district failed and refused to accept the rendered valuation of said property but in each case held the same to the proposed valuation and so reported same to the Tax Assessor and Collector and that said raised valuations became the fixed valuations upon which the tax was based."

(14) "That said Board of Equalization did not accept the petitioners' evidence, and said valuations fixed by said Board of Equalization were, as affecting the property of the petitioners herein, excessive and in excess of the reasonable cash market value or the true value of said properties; discriminatory in that other properties were given a fixed value below the reasonable cash market value or true value of said property; arbitrary in that the Equalization Board valued said properties without inquiry as to their true or reasonable cash market value as of January 1, 1933, and upon a method of valuation which is improper and illegal."

(39) "That the acts of the Board in each of the instances outlined constituted unfair and unjust discrimination against properties of petitioners."

The court further found, in substance, that the individual members of the board of equalization were not acquainted with land values and the elements that should be considered in arriving at land values of the different types of property within the Nederland Independent School District; that the board arbitrarily refused to accept the evidence of values tendered by the plaintiffs and in each and every instance permitted the proposed raises in valuations to stand.

Complainants' allegations of willful fraud on the part of the members of the board of equalization and of a "combine" or conspiracy between the oil companies and the school officials, for the purpose of enabling the oil companies to evade their just share of taxation, and of domination of the school officials by the oil companies, may be dismissed at the outset. There is no proof whatever to support any such allegations.

Likewise, the contention that the board of equalization followed an illegal scheme or plan in arriving at valuations of properties is without support in the evidence. At most, the evidence showed only that several hundred acres of land belonging to four oil companies, some of it consisting of a tank farm, and some of it fronting on the Neches ship channel, were valued uniformly at $83 per acre, and that some of it was of much greater value than $83 per acre. The tanks and other improvements on it were separately rendered and assessed. Although the evidence was conflicting, there was evidence to the effect, and the court so found, that such valuation was far less than the true or market value of such lands. But there was nothing to show that the valuation of $83 per acre was arrived at by application of any scheme or plan of valuation, such as basing it on rental income, as in Rowland v. City of Tyler (Tex.Com.App.) 5 S.W.(2d) 756, or by valuing the lands of the district by zones, without considering improvements, etc. Ogburn v. Ward County Irr. Dist. (Tex.Com.App.) 280 S.W. 169.

■ However, certain findings of fact by the trial court above summarized present a far more serious matter. These findings are, in substance: First, that the valuations placed upon complainants' properties by the board of equalization were excessive and discriminatory; and, second, that such excessive and discriminatory valuations resulted from arbitrary action on the part of the board of equalization in refusing to consider the evidence of valuations given by the complainants at the hearing before the board.

While there is evidence in the record to the effect that the valuations placed by the board on the complainants' properties were not excessive and discriminatory, there is also considerable evidence that they were. The complainants themselves testified that the valuations at which they had rendered their respective properties represented the fair and reasonable value thereof, and that the valuations placed by the board of equalization were far in excess of their value, and also that the valuations placed

upon their properties were far in excess of the valuations placed by the board on similar properties in the district. There was also similar testimony elicited from several witnesses not parties to the suit. Thus, the witness J. S. Edwards, an experienced real estate man, testified that river front property of the oil companies, valued by the equalization board at $83 per acre, was of the value of $1,500 per acre. It was also shown that several acres of the tank farm land of the Pure Oil Company, also valued at $83 per acre, had been sold to the company by the complainant Johnson for $500 per acre. As to the arbitrary action of the board of equalization, it is shown that the complainants appeared before said board in response to the notice given them of the intended raises in their valuations, and that they there testified under oath that they had rendered their properties at their fair and reasonable value, and that the proposed raises were excessive. It is also shown that no testimony was offered before the board to the contrary, and the court further found that the members of the board of equalization did not have sufficient knowledge of property values within the district and of the various elements which should have been considered in placing such valuations to warrant them in disregarding the sworn evidence submitted by the complainants.

The statement of facts is voluminous, and it would serve no useful purpose for us to review the testimony. Suffice it to say that while there is testimony in the record upon which the court could have made contrary findings, nevertheless these material findings do have support. We think this is sufficiently indicated by the brief references to the testimony which we have made above. And since these findings do have support, it is not for this court to disturb them.

We fully recognize the rule contended for by the appellant that the decision of a board of equalization upon a particular assessment, in the absence of illegality, fraud, or something equivalent thereto, is conclusive. It is unquestionably the settled rule in this state that the courts have no supervisory control over boards of equalization. State v. Mallet Land & Cattle Co. (Tex.Sup.) 88 S.W.(2d) 471, and Menardville Independent School Dist. v. Moser (Tex.Civ.App.) 90 S.W.(2d) 578, and authorities cited. This court recognized and applied such rule in the case of Port Arthur Independent School District v. Baumer, 64 S.W.(2d) 412, cited by appellant. Were this not so, valuations for purposes of taxation made by the agency created by statute would be subject to being overturned whenever the opinion of court or jury might differ from the opinion of the board of equalization. Thus the functions of such boards, even though honestly exercised, would be deprived of finality and the courts would become mere boards of tax review in such matters. For that reason courts are not primarily concerned with the matters of valuations placed by boards of equalization. The courts recognize, as the Legislature doubtless did in enacting the statutes upon the subject, that honest mistakes may and will occur in the fixing of valuations, and that absolute equality of taxation is not possible. Missouri, K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S.W. 138, 10 L.R.A.(N.S.) 681. A board of equalization may be called upon within a short time to place valuations upon hundreds of tracts of land and other forms of property, each involving various factors which affect its value. It is obvious that in the very nature of things a board of equalization cannot institute a painstaking and careful investigation with reference to each piece of property valued. It is the intent of the law, however, that a board of equalization may not arbitrarily disregard the rules of fairness in fixing valuations, and when it is made to appear that such has been the case and that overvaluation or discrimination has resulted, to the injury of the complainant, it is within the province of the court to grant relief.

We do not mean to hold in this case that the board of equalization was compelled to accept the evidence of values tendered by complainants, or that they were required to produce contrary proof, or that their failure to summon witnesses and offer rebuttal testimony was of itself arbitrary. Nor do we mean to hold that the mere existence of overvaluation and inequality, as found by the trial court, of themselves warranted the court in granting relief. The controlling fact in this case is that the trial court found not merely that the valuations placed on the complainants' properties were excessive and discriminatory, and that the board of equalization disregarded the sworn evidence tendered by the complainants, but also that there was neither counter proof of any kind, nor sufficient knowledge of values on the part

of the members of the board themselves to warrant them in ignoring the evidence of values placed before them by the complainants. Thus the trial court concluded that the board of equalization acted arbitrarily and in violation of the rules of intrinsic fairness. This conclusion warranted the trial court in granting relief against the overvaluation of complainants' properties which were found to exist. And this is so even though the members of the board of equalization were not actuated by actual prejudice, or did not intend willfully to discriminate against the complainants.

The judgment of the trial court is affirmed.