# BOARD OF EQUALIZATION OF THE CITY OF FORT WORTH ET AL V. W. M. McDONALD.

No. 7403. Decided June 21, 1939.
Rehearing overruled July 19, 1939.
(129 S. W., 2d Series, 1135.)

522

R. E. Rouer, Geo. C. Kemble, R. B. Young, Jr., and Frank E. Crumley, all of Fort Worth, for plaintiff in error.

Houtchens & Houtchens, Ardell M. Young, J. Harold Craik, all of Forth Worth for defendant in error.

Cantey, Hanger & McMahon and McKnight & Johnson, all of Fort Worth, filed brief as amicus curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Chapter XXV of the Charter of the City of Fort Worth deals with "Assessment and Collection of Taxes." Section 1

of this chapter provides for appointment of an assessor and collector of taxes and sets out his duties. Section 2 provides for the appointment annually of a Board of Equalization. Among other things the following provisions are made with reference to the powers and duties of said board:

"It shall be the duty of the Council, as soon as the assessment of rolls of taxes due the City are completed, to refer the same to the Board of Equalization, whose duty it shall be to equalize the taxes assessed on said rolls and to make all necessary correction and adjustments to that end; and, in addition to the powers granted them by this Charter they shall also have the same powers and perform the same duties as the County Commissioners Courts of this State in regard to the assessment of property for taxation and the equalization thereof, and shall be governed in their procedure and acts in this respect as now provided by the laws of this State relating to the equalization of State and County taxes by said Commissioners Courts."

After setting forth other provisions with reference to the valuation and assessment of property for taxation said chapter contains section 32 which is as follows:

"The action of the Board of Equalization shall be final in all cases, unless appeal is taken therefrom to the District Court of Tarrant County, Texas, which may be done by any person, or the agent or attorney, aggrieved by the action of the Board, by giving notice in writing to the said Board of such appeal and the grounds thereof, within ten days after the final approval of the assessment rolls by the said Board, and giving bond payable to the City, to be approved by the City Secretary, in the sum of Fifty ($50.00) Dollars, conditioned that the applicant will pay all costs of such appeal if the action of the Board of Equalization should be sustained by the Court, or if the valuation of the property of such appellant should be raised over the amount at which it stands assessed. A copy of such bond and such notice of appeal and a description made by the Assessor and Collector of Taxes of the property of appellant involved therein, shall be filed in said District Court by the City Secretary on the application of the party aggrieved, and the case shall be docketed upon the civil dockets thereof in the name of the appellant as plaintiff against the Board of Equalization of Fort Worth, defendant, and all such appeals shall be presented to the first term of the District Court after the notice of the appeal is taken and shall take

precedence for trial of all civil cases in said court, and the decision of the District Court in such matters shall be final; provided, however, that if such appeal has not been finally adjudicated by the 31st day of December of the current year, it shall be the duty of the appellant to pay all of said taxes, assessed by the said Board of Equalization against him, and in case he fails to pay said taxes by said time said appeal shall be dismissed and the action of the Board of Equalization held to be final. But in the event appellant pays all taxes assessed against him by the Board of Equalization on or before December 31st of such current year, then, and in that event, if the Court shall, on final adjudication, place a valuation upon appellant's property lower than the valuation placed by said Board of Equalization, the amount of taxes paid on the valuation which is found to be in excess of the valuation fixed by said Court, shall be refunded to him by warrant drawn by order of the City Council, and the said District Court shall compel the issuance and payment of such warrant. The list of property and value thereof as settled by the Board of Equalization, or a copy of so much thereof as may be pertinent to the question at issue, may be produced in Court to be used in evidence on such trial."

We are advised by the parties to the present suit that no such provision as the foregoing appears in the charter of any other city of like class within the State, and possibly does not appear in the charter of any city.

For the year 1935 defendant in error McDonald made due rendition of certain real estate in the City of Fort Worth to the tax assessor and collector, for the purposes of taxation for said year, and certain values were placed by him on the separate items of property. In proper time defendant in error appeared before the Board of Equalization of said City and there was a hearing upon the valuation to be placed on his property as rendered. The Board of Equalization acted upon said rendition and placed its value upon the several different items of property. Being dissatisfied with the action of the Board, defendant in error, in pursuance of the provisions of said section 32 above set out, took an appeal to the District Court of Tarrant County. His petition appears to have been filed September 25, 1935, which was in due time. It was amended December 3, 1936, and trial was had in the district court in January, 1937. In the meantime, defendant in error had complied with the requirements of said section 32 and had paid, under protest, all taxes due according to the valuation fixed on the property by the Board of Equalization. Defend-

ant in error, who will hereinafter be called plaintiff, made the City of Fort Worth and the members of the Board of Equalization parties defendant, and they will hereinafter be designated defendants. While plaintiff's petition attacked the values placed on the various items of property by the Board of Equalization as being excessive, it also contained allegations attacking the values because of having been arrived at in an arbitrary and unreasonable manner, and as being discriminatory.

The trial in the district court was devoted entirely to the question of reasonable market value of various items of property as of date January 1, 1935. Issues were submitted to the jury as to the value of each of said pieces of property and they made answers as to such values. The trial court accepted the findings of the jury as to values, and upon the basis of these values applied the rate of taxation fixed for the year 1935 by the City Council of the City of Fort Worth, and in this manner assessed the taxes due by plaintiff to the City. Upon the assessment thus made it was decreed that plaintiff had been required to pay taxes on an aggregate value of $48,-350.00, instead of $29,011.00, resulting in an excess payment of taxes in the sum of $874.03. Plaintiff was awarded judgment releasing him from all further payment of taxes and the City was ordered to refund to plaintiff the said sum of $874.03.

The Court of Civil Appeals sustained the validity of section 32 of the Charter, and held that the judgment of the district court in the matter of fixing values was final. For that reason it dismissed the appeal. 113 S. W. (2d) 306.

In their argument filed in this Court counsel for plaintiff have very frankly and fairly made admissions which reduce to a very narrow margin the questions involved. Among other things they say:

"We are not unmindful of the fact that the District Court has general original jurisdiction to grant relief to taxpayers in certain causes where it is alleged that the taxing authorities or boards have exceeded their authority, or were without jurisdiction to act, or where they acted corruptly or fraudulently, or where they adopted a fundamentally wrong and illegal method of determining values; but these are direct attacks upon the taxing authorities, originating in the District Courts, and are not based upon mere allegations that the values fixed by the authorities were excessive. Such causes come within the general jurisdiction of the District Court, and are, of course, appealable to the Court of Civil Appeals under

the statutes conferring jurisdiction upon such courts. Examples of such cases may be found in Rowland v. City of Tyler et al., 5 S. W. (2d) 758 (Commission of Appeals); Ramey v. City of Tyler, 45 S. W. (2d) 359; and Early v. City of Waco, 3 S. W. (2d) 131. All of these cases originated in the District Court, not before tax boards, and were instances where the tax boards either did not act in good faith or adopted a fundamentally erroneous or illegal method of fixing values which rendered the assessment void as a matter of law."

After discussing these authorities they further say:

"The authorities just cited clearly distinguish between the two classes of cases. In fact, it is the universal rule that in the absence of charter provisions conferring the right to have findings of tax boards reviewed in the courts upon mere allegations of excessiveness, no such right exists because the findings of the Board upon such matters is final. Before any court can interfere, there must be allegations of fraud, or such illegality in the methods used as to render the assessment void.

"As a matter of fact, the Legislature, in providing for Boards of Equalization in cities and towns has specially stipulated that the actions of such boards shall be final. Article 1054, R. S. 1925, is as follows:

" 'The board of equalization shall meet at the time fixed in said order of adjournment, and shall hear all persons the value of whose property has been raised. If said board is satisfied they have raised the value of such property too high, they shall lower the same to its proper value. The action of said board at said meeting shall be final, and shall not be subject to revision by said board or any other tribunal.'

"A similar statute (Article 7212) creating boards of equalization for counties expressly provides that the findings of such boards shall be final."

They seek to uphold section 32 of the Charter solely upon the ground that it has provided a statutory right of appeal to the district court on the question of excessive valuation alone, which provision is applicable to the City of Fort Worth only, but which is nevertheless valid. In this connection they say:

"The provisions of the Charter of the City of Fort Worth involved here and the similar provisions in the Charter of the City of Austin, as disclosed by the case of Scottish-American Mortgage Co. v. Board of Equalization of City of Austin, 45 S. W. 757, are the only two instances we have been able to

find where the right of appeal to a court upon mere allegations of excessiveness were conferred upon the taxpayers. From the rule announced by the foregoing authorities, such charter provisions confer a right upon the taxpayers which did not theretofore exist by virtue of any other law. *Such Charter provision constitutes a valid creation of a right to a court review even upon the alleged ground that the levy complained of is excessive.* But the right to a judicial review extends only as far as the court designated under the provisions of the charter creating the right." (Emphasis ours.)

Counsel for plaintiff rely strongly upon the case of Scottish-American Mortgage Company v. Board of Equalization of City of Austin, 45 S. W. 757, as authority to sustain the right of the Legislature to confer upon the district court jurisdiction to entertain an appeal from the Board of Equalization "upon mere allegations of excessiveness" alone. Such decision is not authority for that proposition, but by implication appears to be to the contrary. It is true that by provisions of a special charter granted by the Legislature, prior to the adoption of the Home Rule Amendment, the Legislature had provided for an appeal to the County Court of Travis County from the action of the Board of Equalization on the matter of valuation. The Court of Civil Appeals first observed that such jurisdiction had not been conferred upon the county court by the general statutes relating thereto, and if possessed by such court at all was by virtue of the special provision in the city charter. The court then stated: "If under Section 22, Article 5, of the Constitution (of 1895), the Legislature had power to confer jurisdiction upon the county court in such cases, it clearly had the right to restrict and limit the jurisdiction to that court." The court dismissed the cause for want of jurisdiction, without deciding whether or not the Legslature had power to confer such jurisdiction, as in any event the judgment of the county court would be final. There really appears to be an intimation in the opinion that the court thought jurisdiction over the matter of valuation of property for taxes could not be conferred upon the county court.

■ There is a vast array of strong authorities holding that the matter of valuation of property for taxes and the equalization of values, is only incidental to the levy and assessment of taxes, which is peculiarly a legislative and administrative matter, and not judicial, and therefore jurisdiction for that purpose cannot be conferred upon the courts. The following are some of the illustrative cases: Peden v. Board of Review, 208

Ind. 215, 195 N. E. 87, and authorities cited; North Chicago Hebrew Cong. v. Board of Appeals, 358 Ill. 549, 193 N. E. 519; In Re C. R. I. & P. Ry. Co., 140 Kan. 465, 37 Pac. (2d) 7, and authorities cited; Silver v. Osage County Com'rs., 76 Kan. 687, 92 Pac. 604; 13 L. R. A. (N. S.) 716, 14 Am. Cas. 163; Bradley v. City of New Haven, 73 Conn. 646, 48 Atl. 960; Bower v. City of Bainbridge, 116 Geo. 794, 43 S. E. 67. While these are authorities to the contrary, they are mostly based on particular constitutional provisions.

■ This, it seems to us, is peculiarly true under our Constitution. Section 18 of Article 8 of the Constitution provides that "the Legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation (the County Commissioners' Court to constitute a board of equalization); and may also provide for the classification of all lands with reference to their value in the several counties." It has been held that the reference to the Commissioners' Court pertains to state and county taxes, and not city taxes, but the requirement for creating of an agency for equalizing values does apply to cities and towns. The necessity for some agency, other than the courts, for assessing values and equalizing same, with provision that their findings shall be final, in absence of fraud or the use of arbitrary standards, is obvious. It has been many times noted in judicial decisions that the valuation of property for taxes involves discretion and peculiar knowledge of conditions, as well as many other elements not easily susceptible of establishment by testimony given under ordinary rules of evidence. See, for instance, People v. McCarthy, 102 N. Y. 630, 8 N. E. 85, 90. But perhaps the most apt statement of reasons why the matter of fixing values and equalizing of same should not be vested in courts is that contained in the case of City of Augusta v. Pearce, 79 Geo. 98, 4 S. E. 104 by the Supreme Court of Georgia. In that case it was said:

"There is no fraud charged; there is nothing charged but overvaluation. It is not charged that these officers acted in bad faith, or fixed a valuation that they did not believe was a true and correct one. The scheme of the bill is to get away from the opinion of the assessing officers, and substitute for it proof by witnesses as to what the real value was. Of course, this is simply to make a jury, in the last resort, or perhaps the masters in chancery, the assessors of the city taxes of Augusta. That is entirely impracticable. No city could be conducted upon that principle of raising revenue. A city is a gov-

ernment, and it must know what its income is likely to be. It must be able to assess taxes, to make its estimate beforehand upon the probable yield of the assessment, and order its expenditures and disbursements accordingly. It is no less impracticable for a city to live upon the verdict of juries, or the reports of masters, than for a private individual to do it. It would be just as easy to determine by verdict, or the master's report, whether we are to have breakfast or dinner, and live on that scheme of supply, as to determine by verdict or report whether a city shall have revenue, and sustain municipal life by that dilatory and uncertain source of income. Nothing could be more wild than to attempt to maintain government by judicial decrees; and, if one citizen can demand a decree on the question of value, so can every citizen. With us, the judge, as chancellor, can determine no question of fact. Where disputed facts are involved, either the report of a master or the verdict of a jury is indispensable. Final decrees can be rendered only during term. There are but two terms in a year for each county, commencing six months apart, and the most expeditious equity cause is not ripe for decree until the second term. It surely can admit of no question that a court of chancery is an unfit instrumentality to assess taxes, or to supervise assessments upon the bare, naked question of value. While municipal taxes upon property must be ad valorem, yet value is to be ascertained and determined, not by judicial proceedings, but by the legally constituted authorities established for that purpose in the given municipality; and an assessment by such authorities in the prescribed mode, and without fraud or collusion, is final and conclusive upon the question of value, as a basis of taxation for the time being."

To like effect are the remarks of the court in the case of Nederland Independent School District v. Carter, 93 S. W. (2d) 487.

However, it is not necessary to decide authoritatively that said provision would be void because it attempts to impose administrative and legislative duties upon the courts, but the foregoing suggestions are pertinent in view of later statements.

Plaintiff's counsel admit that under the Constitution and general laws of the State, district courts do not have jurisdiction to entertain appeals from equalizing boards on the question of excessiveness of valuation. This, however, is exactly what is attempted to be done by the charter provision in question; creating the anomalous situation of the District Court of Tarrant County alone possessing such jurisdiction,

and that jurisdiction being conferred by a provision of a charter rather than by general laws of the State.

■ In our opinion, said section of the Charter is invalid, because it constitutes an attempt to limit, by charter provisions, the right of appeal given by the Constitution and general laws of the State. Section 6, Article 5, of the Constitution, after making provision for Courts of Civil Appeals, provides: "Said Courts of Civil Appeal shall have appellate jurisdiction coextensive with the limits of their respective districts, which shall extend to all *civil cases* of which the district courts or county courts have original appellate jurisdiction, under such restrictions and regulations as may be provided by law."

By Article 1819 of the Revised Statutes of 1925, as amended in 1929, it is provided that "the appellate jurisdiction of the Courts of Civil Appeals shall extend to all *civil cases* within the limits of their respective districts of which the district courts and county courts have or assume jursdiction, when the amount in controversy or the judgment rendered shall exceed One Hundred Dollars exclusive of interest and costs."

Article 2249 provides as follows: "An appeal or writ of error may be taken to the Court of Civil Appeals from every final judgment of the district court in *civil cases*."

These provisions of the Constitution and general laws undoubtedly guarantee an appeal from the district court in all "civil cases." If an action like this is a civil case, then it is obvious that the privilege of appeal thus given is destroyed. If the proceeding be not a civil case but merely an administrative matter, then, as suggested above, the attempt to impose jurisdiction in such a matter upon the court, by charter of a city, is invalid. See particularly the case of North Chicago Hebrew Cong. v. Board of Appeals, supra.

Approaching the matter from a different angle, the same result follows. The right to an appeal from the district court to the Court of Civil Appeals, by virtue of the Constitution and general laws, in cases where equalization boards have exceeded their authority, or acted fraudulently, or adopted some fundamentally illegal method for ascertaining values, is unquestioned. Counsel for plaintiff say: "Such causes come within the jurisdiction of the district court and are, of course, appealable to the Court of Civil Appeals under the statutes conferring jurisdiction upon such court." In such cases it has been held that the district court is without power to revalue and reassess property and levy taxes based on such revaluation or

reassessment. This rule has been held applicable to the State of Texas (State v. Richardson, 126 Texas 11, 84 S. W. (2d) 1076), to independent school districts (Nederland Independent School District v. Carter, 93 S. W. (2d) 487; Menardville Independent School District v. Moser, 90 S. W. (2d) 578), and to cities (Texas & P. Ry. Co. v. City of El Paso, 126 Texas 86, 85 S. W. (2d) 245). Undoubtedly the same rule would apply to the City of Fort Worth, and the District Court of Tarrant County, in the absence of the section of the Charter in question. If therefore effect is given to said section, and it be ruled that the appeal allowed by said Charter is only upon the question of excessive valuation, and no appeal is allowed from the finding or judgment of the district court, this necessarily results in abolishing, so far as the District Court of Tarrant County is concerned, the nature of the appellate jurisdiction possessed by that court under general laws, as well as the right of appeal from that court.

■ The Honorable Court of Civil Appeals in its opion said: "There is no provision in the Constitution or in any statute that gives the district court appellate jurisdiction over matters arising before the Board of Equalization of any city, and we are unable to see how it can be reasonably contended that such court has original jurisdiction over same." The court then argues that a charter provision giving such jurisdiction is not in conflict with the general laws. The court, however, overlooks the fact that if such jurisdiction be given by the charter provision in question, and be made final, it completely destroys the other jurisdiction possessed by the court under general laws.

This would result in bringing said provision of the Charter in conflict with section 5, article 11, which is the Home Rule Amendment under which the present Charter of Fort Worth was adopted, and which provides that "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State."

An elaborate argument is made to show that this section of the Charter was in reality put into the Charter by a general law of the Legislature, and is therefore not in conflict with the "General Laws enacted by the Legislature of the State." The argument, briefly, is as follows: In the year 1909 the Legislature granted a special charter to the City of Fort Worth and this identical section was a part of that special charter. In 1924 the City, acting in pursuance of the Home Rule Amend-

ment, held an election and adopted the present Charter, which contains said section 32 in the language of the special charter of 1909. It is contended that by virtue of Article 1177 of the Revised Statutes of 1925, which was a part of the Enabling Act of 1913, when this section went into the charter adopted in 1924, it went in as a part of the General Laws of the State and not merely as a provision of the charter adopted by the people. This involves a construction of said Article 1177 which is as follows:

"All powers heretofore granted any city by general law or special charter are hereby preserved to each of said cities and the power so conferred upon such cities, either by special or general laws, is hereby granted to such cities when embraced in and made a part of the charter adopted by such city; and until the charter of such city as the same now exists is amended and adopted, it shall be and remain in full force and effect."

We think this article was intended to accomplish a double purpose:

First. It was intended to preserve all powers theretofore conferred upon cities by general or special laws until a new charter in pursuance of the Home Rule Amendment could be adopted and made effective. The City of Munday v. First State Bank of Munday, 66 S. W. (2d) 775 (Writ ref.).

Second. It was further intended to enumerate and grant to cities incorporated under the Home Rule Amendment all powers theretofore possessed by them, whether enumerated in the general Enabling Act or not, *when embraced in and made a part of the charter adopted by the City*. The reference to powers formerly possessed by the City under special and general laws was intended to specify powers, in addition to those set forth in the general Enabling Act, which the City might exercise, *if embraced in and made a part of the charter adopted by the City*. The case of Frankenstein v. Rushmore, 217 S. W. 189, involved only an amendment to a charter, and not the adoption of a new charter. It is plain, then, that the adoption by the City is the thing which invests the City with such powers, and not merely the fact that under a special charter it formerly was given such powers. It follows, therefore, that the section in question is a part of the Charter of the City of Fort Worth solely by virtue of the fact that it was adopted as a part of the charter voted on in 1924, and has no virtue simply because it was contained in the charter granted by the Legislature in 1909.

We therefore conclude that said section 32, in so far as it attempts to give to the District Court of Tarrant County jurisdiction to revalue and equalize valuations placed upon property by the Board of· Equalization for tax purposes, and to make the findings of said district court in such matter final, thus robbing said district court of a jurisdiction possessed by it along with other district courts, by virtue of the Constitution and General Laws of the State, and thus denying right of appeal given in civil cases from that court to the Court of Civil Appeals, is in conflict with Section 5 of Article 11 of the Constitution, and with the General Laws of the State; and is void. It follows therefore that the judgment entered in this case by the district court, and the judgment of the Court of Civil Appeals upholding said judgment as a final one, are a nullity.

■ It is strongly insisted, however, that the City of Fort Worth cannot attack the validity of this section of its charter under the general rule that a municipal corporation cannot question the validity of its own charter. The question is one of vital public concern, and the City is in no manner attempting to destroy the charter which gave it life. It is of great importance to the City and its taxing agencies, as well as the property owners of the City, to know whether or not they are proceeding under an invalid provision of the charter in the highly important matter of assessing and levying taxes. We therefore overrule this contention.

■ Because said section is void to the extent above mentioned, it did not destroy plaintiff's right to an appeal to the district court for revision of the action of the Board of Equalization, under its general equitable jurisdiction. Plaintiff's petition contained ample allegations invoking such jurisdiction. It is true that the trial court, at the instance of defendant, struck out some of these allegations. This was undoubtedly error. However, it is evident that the parties were proceeding under said section of the charter, with a probable intention on the part of the defendants to test the validity of same; and this manifestly resulted in the trial being upon an erroneous theory. It is therefore proper for the case to stand upon the docket as a suit to revise the action of the Board of Equalization under the general equitable jurisdiction of the district court.

■ The payment made by plaintiff should not be regarded as voluntarily made, but should be regarded as a tender to the extent the valuation made by the Board of Equalization may

be sustained; or to the extent of the valuation made by plaintiff in rendering his property, in the event the action of the board of Equalization is not upheld, thus releasing plaintiff from interest and penalties. The City should of course make refund of any overpayment. The case of State v. Richardson, 126 Texas 11, 84 S. W. (2d) 1076, and the cases there cited, will furnish sufficient direction for further proceedings in the matter.

■ In our opinion defendant in error should pay all costs incurred in this Court, and plaintiffs in error should pay all costs incurred in the Court of Civil Appeals and the district court. It is evident that the trial as held in the district court was induced by the section of the charter in question and to some extent was determined by exceptions urged by plaintiffs in error.

The judgments of the Court of Civil Appeals and of the district court are reversed and the cause remanded for further proceedings in accordance with this opinion.

Opinion adopted by the Supreme Court June 21, 1939.

Rehearing overruled July 19, 1939.