## FORWOOD et al. v. CITY OF TAYLOR et al.

### No. 9690.

Court of Civil Appeals of Texas. Austin.

Feb. 11, 1948.

Rehearing Denied Feb. 25, 1948.

Peters & Peters, of Taylor, and Dan Moody, of Austin, for appellants.

Wood & Wilcox, of Georgetown, and Grimes & Owen, of Taylor, by E. M. Grimes, of Taylor, for appellees.

GRAY, Justice

Appellants, Taylor Bedding Manufacturing Company, The Forwood Realty Company, both private corporations; D. F. Forwood, individually; and Virginia Lawrence, A. P. Barton and H. C. Booth, as trustees of "The D. F. Forwood-Virginia Lawrence Trust," sued the City of Taylor, Texas, its Board of Commissioners and City Manager, in their official capacities, seeking to enjoin the collection of the amount of taxes claimed by the City of Taylor to be due as taxes on the properties

of appellants located within the corporate limits of said City, and being the difference in the amount of taxes due according to the rendition of the properties as made by appellants for the year 1946 and the amount due as the result of the increased valuation made by the Board of nine members appointed by the City Commissioners to serve as a Board of Equalization. Appellants assert the said Board was not a legal board of equalization and its action in the valuation of appellants' properties for purpose of taxation is void.

A trial was to the court and a judgment denying appellants the relief prayed for was rendered.

This appeal by appellants is predicated on two points:

"(1) The purported ordinance of the City of Taylor naming nine persons to act as a board of equalization and the attempt of said nine persons to increase the values at which appellants had rendered their properties for taxation by the City of Taylor for the year 1946 were void.

"(2) Appellants having timely tendered payment of taxes on the basis of the city tax rate applied to the values at which they had rendered their properties, the judgment of the trial court should have been in favor of appellants and judgment in their favor should be rendered here."

The City of Taylor is incorporated under the Home Rule Amendment to the Constitution of Texas, Art. 11, Sec. 5, Vernon's Ann.St. The city charter contains the following provisions:

"Article II. Powers

"Section 1. By the legal adoption of this charter, the City of Taylor shall be made and constituted a body politic and corporate, and shall possess all powers not inconsistent with this charter and the Constitution and laws of Texas.

"For the greater certainty, the following are hereby specially enumerated and referred to as being among the other powers which are hereby conferred upon, and which may be exercised by the City of Taylor, to-wit:

"Section 2. All the powers conferred upon Cities and Towns by TITLE 22 of Revised Civil Statutes of 1911, except as may hereinafter be denied or limited, are hereby conferred upon the City of Taylor as fully and completely as if such powers were herein separately enumerated.

"Section 3. All powers mentioned in and under Section 4 of the Act of the Thirty-third Legislature, page 310 to 316 [Vernon's Ann.Civ.St. art. 1175], entitled 'An Act Authorizing Cities, having more than five thousand inhabitants, by a majority vote of the qualified voters of said city, at an election held for that purpose to adopt and amend their charters, etc.' are hereby conferred upon the City of Taylor as fully and completely as if each of said mentioned powers were herein sep¬ ˙ately enumerated.

"If in any instance there should arise or be a conflict as to powers mentioned, and conferred by sections Nos. 2 and 3 hereof then in such instance the power or powers mentioned under and conferred by section No. 3 hereof shall take precedence.

"Section. 4. It is contemplated and ˙intended by the adoption of this charter to confer, and is hereby conferred, upon the City of Taylor, the full power of local self government and the enumeration of and reference to the powers hereinabove made, or that hereinafter may be made, shall never be construed to preclude, by implication or otherwise, the said City of Taylor from exercising any and all powers incident to the full enjoyment of local self government, provided that such powers shall not be inhibited by the Constitution of the State of Texas."

"Article V. Appointive Officers

"Section 1. The Board of Commissioners shall appoint by a majority vote of all the elected members thereof, a city manager, a city attorney, recorder of the Corporation Court, an auditor and a Board of Equalization any of whom except the Board of Equalization may be removed by a like majority vote of said commission at the pleasure of said Board of Commissioners."

"Article XII. Taxation

"Sec. 5. The Board of Commissioners shall create and appoint a Board of Equalization whose duties shall be to equalize the

values of all property rendered for taxation in the City of Taylor; prescribe the qualifications, compensation and number necessary to constitute said board, and enact all ordinances necessary to regulate and control the equalization of values by such board."

Title 22, Revised Civil Statutes 1911, included the then Art. 945, which by the recodification of 1925 became the present Art. 1048, Revised Civil Statutes, and as amended in 1937, Vernon's Ann.Civ.St. art. 1048, this Article reads:

"The councils of cities and towns incorporated under the General Laws shall within their discretion act as a Board of Equalization. Said councils of such cities and towns shall annually at their first meeting or as soon thereafter as practical exercise such discretion, and if they so determine they shall have the authority to appoint three (3) commissioners, each a qualified voter, a resident, and property owner of the city or town for which he is appointed who shall be styled the Board of Equalization. At the same meeting said council shall by ordinance fix the time for the meeting of such Board. Before said Board enters upon its duties, it shall be sworn to faithfully and impartially discharge all duties incumbent upon it by law as such Board. Acts 1887, p. 152; G.L. vol. 9, p. 950; Acts 1937, 45th Leg., 2nd C.S., p. 1946, ch. 46, § 1."

On the 17th day of June, 1946, the City enacted an ordinance, as follows:

"Be it ordained by the City of Taylor, Texas,

"Sec. 1. That O. H. Schram, K. L. McConchie, H. G. Rose, Ed. Kubala, A. D. Evans, J. Frank Smith, Geo. Prewitt, J. W. Armstrong, and Ray P. Lewis, being legal voters and property owners within the City of Taylor, Texas, be and they are hereby appointed by the Board of City Commissioners of the City of Taylor, as the 'Board of Equalization' of the City of Taylor, Texas, for the year 1946.

"Sec. 2. That said Board of Equalization shall meet at the City Hall of Taylor, Texas, at 9 o'clock a. m. on the 25th day of June, A. D. 1946, for the purpose of receiving from the City Tax Assessor of Taylor, Texas, all tax assessments, lists, rolls and books of said Assessor for examination, correction, equalization, appraisement and approval.

"Sec. 3. The fact that the assessment rolls and lists of the Tax Assessor of Taylor, Texas, are now ready and it is very important that such rolls, lists, and books of said Assessor be examined, corrected, the assessed value of the property equalized and appraised and approved at as early a date as possible creates an emergency and public necessity, that the rule requiring ordinances to be read on three separate meetings be and the same is hereby suspended and this ordinance passed as an emergency measure and it shall take effect immediately upon its approval and passage.

"Passed, examined and approved on this the 17th day of June, A. D. 1946."

Pursuant to the above ordinance, th persons therein named met as a Board of Equalization, and, in response to notice from said Board, appellants appeared and protested any increase in the valuation of the several pieces of property owned by them and located within the City of Taylor. Such Board raised the valuation of appellants' said properties and thereby increased the amount of taxes due thereon for the year 1946. Prior to this meeting appellants rendered their several pieces of property for taxes, and at the trial tendered into court the amounts of money due for taxes according to their own renditions made for said year 1946.

The provisions of Sec. 5 of Art. XI, Constitution of Texas, relevant here, are:

" * * * and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *."

Sec. 18 of Art. VIII of our Constitution provides:

"Sec. 18. The Legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation, (the County Commissioner's Court to constitute a board of equaliza-

tion); and may also provide for the classification of all lands with reference to their value in the several counties."

Speaking of this Sec. 18, the Commission of Appeals, in Board of Equalization of City of Fort Worth, v. McDonald, 133 Tex. 521, 129 S.W.2d 1135, 1139, said:

"It has been held that the reference to the Commissioners' Court pertains to state and county taxes, and not city taxes, but the requirement for creation of an agency for equalizing values does apply to cities and towns."

The agency created by the legislature, for equalizing the valuation of property "subject to or rendered for taxation" in cities and towns, is provided for in Art. 1048, supra, and we hold this Article and the constitutional provisions of Sec. 5 of Art. 11 supra, control the charter provisions contained in the city charter as quoted, supra. It must, however, be borne in mind:

1. The Board of Equalization for the City of Taylor is by statute and the constitution a de jure board, or office; and 2, the power of appointment of members of this board, or office, is vested in the City Commissioners. The City Commissioners having made appointments of more members to the Board than authorized by the statute, Art. 1048, supra, presents for determination the question of whether or not such Board is or was a de facto board. Here the office of the Board of Equalization was a de jure office; the power of appointment of the members of said Board was vested and was exercised by lawful authority; the members so appointed possessed the necessary qualifications. The appointed members being nine instead of three.

In Cox v. Houston & T. C. Ry. Co., 68 Tex. 226, 4 S.W. 455, 457, the court said: " * * * to make one a de facto officer, he must have some colorable right to the office,—some appearance of right which would lead the public, without inquiry, to suppose him to be the officer he assumes to be." Here it must also be further observed the attack is made on the acts of the Board while the members thereof assumed to act as the Board of Equalization under the authority of their appointment.

In Norton v. Shelby Co., 118 U.S. 425, 6 S.Ct. 1121, 1127, 30 L.Ed. 178, the Supreme Court said:

" 'An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised: —First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election; but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or an appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.' " State v. Carroll, 38 Conn. 449, 9 Am.Rep. 409.

The third condition is applicable to the facts here. In United States v. Royer, 268 U.S. 394, 45 S.Ct. 519, 520, 69 L.Ed. 1011, the court defined the term as follows:

" 'A de facto officer may be defined as one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper.' A shorter definition is that of the Supreme Court of Kansas: * * * 'A de facto officer is one who is surrounded with the insignia of office, and seems to act with authority.' "

A de facto appointment "constitutes color of title or color of appointment." 43 Am.Jur., § 481, p. 233. The rule applicable to individuals applies to members of a board. 46 C.J., § 371, p. 1058.

It is clear the members of the Board of Equalization held their office under "color of title" and under "color of appointment," and proceeded to discharge their duties with the appearance of acting with authority.

We hold the provisions of our State Constitution and the statutes, supra, conferred on the City Commissioners the power of making appointments to the existing office of the Board of Equalization; that the defect or irregularity of appointing more than three members to such Board does not render the action of the Board illegal or void; but the Board was a de facto board and its action in raising the valuation of appellants' properties must be upheld. It follows we overrule appellants' first point, which renders unnecessary a discussion of the second point.

The judgment of the trial court is affirmed.

Affirmed.