CITY OF FORT WORTH v. FIRE DE-
PARTMENT OF CITY OF FORT
WORTH et al.

No. 14954.

Court of Civil Appeals of Texas.
Fort Worth.

July 9, 1948.

Rehearing Denied Sept. 10, 1948.

Heard L. Floore, Sam A. Woodward, and R. E. Rouer, all of Fort Worth, for appellant.

Doyle H. Willis, Oliver W. Fannin, Jr., and Oliver W. Fannin, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

The primary purpose of this suit, brought by the City of Fort Worth under the Uniform Declaratory Judgments Act, Art. 2524—1, Vernon's Tex.Civ.St., is to test the constitutionality of Art. 1269m, Vernon's Tex.Civ.St., Acts 1947, 50th Leg., p. 550, ch. 325, providing for a civil service system for policemen and firemen in cities having a population of more than 10,000.

The trial court declared that the Act in question was constitutional and valid, with the exception of the provisions of Section 18 thereof, which section was adjudged to be unconstitutional and invalid.

The City of Fort Worth has appealed from that portion of the judgment declaring the Act to be valid, while The Fire and Police Departments and each and all of the members of said departments, who were named as defendants in the suit, have appealed from that portion of the judgment declaring Section 18 to be invalid. We shall first discuss the contentions raised by the City of Fort Worth under its five points of error.

Section 1 of the Act declares that there is hereby established in all cities having a population of ten thousand or more inhabitants according to the last preceding census, and having a paid Fire Department and Police Department, a Firemen's and Policemen's Civil Service. Sections 2 to 24, inclusive, provide in detail for the establishment of the civil service and mode of its operation. Section 25 provides for criminal penalties against any chief executive of a city who willfully fails or refuses to appoint the Civil Service Commissioner provided for in the Act, or who willfully fails or refuses to put the Act into operation, or who willfully attempts to obstruct the operation and enforcement of the Act. Section 26 and 27 contain further details relative to the operation of the civil service. Section 27(a) provides in effect that

the provisions of the Act shall not apply to any city unless first determined at an election which shall be called within 90 days from the effective date of the Act. If the majority of the people voting at the election favor adoption of the Act, it is to be put into effect. If the majority of the voters reject the adoption of the Act, the matter is not to be resubmitted to the voters for a period of one year. After such year, the matter may be resubmitted upon a petition signed by not less than five per cent of the qualified voters voting in the last preceding city election. Upon the filing of such a petition, the matter shall again be submitted to the voters. Section 27(b) provides that in any city where the Act has been in operation for five years, the question of repeal of the system may be submitted upon petition of ten per cent of the qualified voters. Section 28 provides, among other things, that the Act shall supersede all other civil service pertaining to Firemen and Policemen in the cities covered by the Act.

The provisions of Section 18 will be discussed later in the opinion.

The principal argument against constitutionality of the Act is made under the first point of error. The substance of it is that the Act is an invasion of the right of the cities to adopt and amend their charters under the Home Rule Amendment to the Constitution, Article XI, Section 5, Vernon's Ann.St. which reads as follows:

"Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent. of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provi-

sion be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon; and provided further, that no city charter shall be altered, amended or repealed oftener than every two years."

It seems to us that the contentions made by the City of Fort Worth have heretofore been made and overruled in a number of decided cases, which did not involve this particular Act, but where similar argument was made against the constitutionality of other Acts that is made concerning the Act now before us.

In Huff v. City of Wichita Falls, 121 Tex. 281, 48 S.W.2d 580, 583, the court says:

"The courts have settled the question that charter provisions and city ordinances of home-rule cities are not valid when in conflict with the general laws of the state." (Citing cases.)

█ The City does not appear to deny that the provisions of its charter pertaining to the police and fire departments would not be valid if in conflict with general laws of the state in force at the time such charter provisions were adopted. From our study of the decisions, it seems that there is no difference in the application of the general rule above stated in Huff v. City of Wichita Falls, whether the general law in conflict with the charter provision be one which was enacted before or one which was enacted after the adoption of the charter provision. In the opinion written on motion for rehearing in Hunt v. Atkinson, Tex.Com.App., 18 S.W.2d 594, 595, it is said:

"This clearly shows that the legislative power is in all things supreme; that the power of the municipality is subject in all respects to 'such limitations' as may be prescribed by the Legislature, without distinction as to those limitations then existing or arising through subsequent legislative enactments."

In Dry v. Davidson, Tex.Civ.App., 115 S.W.2d 689, 692, error refused, the City of Houston urged the unconstitutionality of an act of the legislature which provided for minimum wages for firemen and police-

men. Citing many of the controlling decisions, including Hunt v. Atkinson, the court said:

"Neither did the pre-existing firemen's minimum-salary ordinances of the city of Houston of 1936 stand in the way of this subsequently enacted general law of the state in the nature of the veto—rather were they just superseded or amended by it in that respect as the inevitable effect of the visitation of superior authority."

The holding in Dry v. Davidson was expressly upheld in McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722.

In Smith v. City of Dallas, Tex.Civ. App., 163 S.W.2d 681, 683, error refused, provisions of the charter were declared ineffective as against general laws of the legislature thereafter enacted which were contrary to the charter provisions. We quote from the opinion:

"Provisions of this municipal charter, or of ordinances previously in force, cannot be invoked to permit exercise of powers which have been prohibited by state law subsequently enacted."

The City argues that the constitutional provision is not a grant of power to the Legislature to amend city charters by passing general laws, but that it is rather a limitation on the rights of the citizens of the city to adopt charter provisions which are in conflict with general law. The result reached in the decided cases is that a provision of a city charter, or a city ordinance, must yield to a subsequently enacted general law, if the two are in conflict. As said in Dry v. Davidson, supra, it is the inevitable effect of the visitation of superior authority. The enactment of the general law may have the same practical result as would the adoption or amendment of a charter provision, but, as said in Hunt v. Atkinson, supra, the statute of the Legislature is not a charter, but is a general law.

Quoting again from Dry v. Davidson, supra:

"Thus upon its face the provision giving such cities the right to adopt or amend their own charters accords that privilege only with these two strings tied to it: (1) They may do so, 'subject to such limitations as may be prescribed by the Legislature';

and (2) provided no charter 'shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature'; this phrase, 'as may be prescribed,' can only mean that future legislation may also limit whatever action a city may take, as well as that existing at the time it first takes out or amends its charter."

■ Throughout its brief the City argues that the Legislature has no authority to write provisions into the charter of the City of Fort Worth. While, as we have said, the enactment of a general law by the Legislature may have somewhat the same effect of nullifying or amending a provision of a city charter as would the amendment of the charter by a vote of the people of the city, yet, the enactment of the general law is not an amendment of the charter. It was expressly so declared in the opinion in Hunt v. Atkinson which appears in 18 S.W.2d 594, 595, as follows, "* * * the validating law which we have held put an end to the controversy is not a charter in any sense of the word, nor is it a local or special law within the meaning of the Constitution. It is a general law, applicable alike to all cities coming within its terms."

■ The City argues further, in the same connection, that the effect of the statute in question is to amend the charter in violation of the provision of the Home Rule Amendment, Article XI, Section 5, to the effect that no city charter shall be altered, amended or repealed oftener than every two years. As we have said, the enactment of a general law by the Legislature is not an alteration, amendment or repeal of a city charter provision which is in conflict with the general law. Also, it would be unreasonable to give such a construction to the constitutional provisions as would permit a city to defeat the authority of the Legislature to enact a general law by the simple device of amending the city charter within the two year period preceding the legislative session.

■ The City argues against the validity of the Act on the ground that the Legislature has made an unlawful effort to delegate to the voters of the city the right to

suspend laws, particularly in view of the fact that the Act provides for certain criminal penalties. The contention is overruled. The same or similar contentions have heretofore been overruled by the Supreme Court. Spears v. City of San Antonio, 110 Tex. 618, 223 S.W. 166, 167; and Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070, are sufficient authority for our holding. We quote from the opinion in the former case:

"It is an important and ordinary function of the Legislature, however, to confer powers, on appropriate governmental agencies, to be exercised in the promotion of the general welfare; and it is now thoroughly settled that it furnishes no valid objections to the grant of powers by the state to municipalities for the act of the Legislature granting the powers to require each municipality, before availing itself of the granted powers, to indicate its acceptance of same by the votes of the electors of the municipality." The cases relied on by the City are distinguished from the kind of case before us in the opinions in the Spears and Trimmier cases, just cited.

■ Section 1 of the Act provides in effect that it is applicable to all cities having a population of 10,000 or more inhabitants according to the last preceding Federal Census. The City argues that the Act is invalid because it could not apply to a city which might attain a population of 10,000 or more after the effective date of the Act. We overrule the contention under authority of City of Fort Worth v. Bobbitt, 121 Tex. 14, 41 S.W.2d 228; and City of Fort Worth v. Morrison, Tex.Civ.App., 164 S.W.2d 771, error refused.

■ We overrule without discussion the contention that there was no reasonable basis for the classification of cities to which the Act should apply. Many of the cases above cited discuss and overrule similar contentions therein made.

We overrule all points of error presented by the City.

Section 18 of the Act reads as follows:

"In the event any Fireman or Policeman is dissatisfied with the decision of the Commission, he may within ten (10) days after the rendition of such final decision, file a petition in the District Court, asking that his order of suspension or dismissal be set aside, that he be reinstated in the Fire Department or Police Department, and such case shall be tried de novo. Such cases shall be advanced on the docket of the District Court, and shall be given a preference setting over all other cases."

The trial court held Section 18 invalid.

■ Much has been written concerning judicial review of administrative orders. In many situations the statutes provide for such review, as for instance, in the case of orders of the Railroad Commission. In the absence of a statute so providing, the right of judicial review will be implied. 16 C.J.S., Constitutional Law, § 629, p. 1289. The administration of the civil service provided for by the Act involves the exercise of discretion by the officials therein named, in which case a court reviewing the acts of the city officials will not be permitted to substitute its discretion for that of the administrative officials. The City argues that Section 18 of the Act is invalid in that it permits the court or jury trying the case to substitute its discretion for that of the administrative officials of the City, with the result that the district court has imposed upon it administrative as distinguished from judicial functions. The provisions of Section 18 are sketchy, but seem to provide that the district court shall try de novo not only the question of the validity of the order of the Commission suspending or dismissing a Fireman or Policeman, but also the question of whether he shall be reinstated in the Fire or Police Department. Under settled rules, whether there is a statute expressly so providing or not, resort may be had to a court of competent jurisdiction to determine whether an administrative official has acted capriciously or arbitrarily, or without or beyond authority of law. But, if such an order is declared invalid, the court may not proceed further and undertake to usurp the administrative function by issuing the order which it thinks the administrative official ought to issue. To quote from a case dealing with a proration order of the Railroad Commission:

"A court has the right to review the action of the Railroad Commission, and to

strike its orders down if they are illegal; but it has no authority to write a proration order for the Commission, nor to prescribe the terms of a subsequent order to be entered by the Commission." Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941, 950.

In Board of Equalization v. McDonald, 133 Tex. 521, 129 S.W.2d 1135, the Supreme Court declared invalid a city charter provision which undertook to confer upon the district court power to place a value on property for taxation purposes where a property owner should be dissatisfied with the value placed on the property by the taxing officials of the city. It was declared that such a function was an administrative one which could not be conferred upon the courts.

The Supreme Court of Michigan in Appeal of Fredericks, 285 Mich. 262, 280 N.W. 464, 125 A.L.R. 259, declared that an attempt of the legislature to create a right of appeal to the courts from a decision of a civil service commission would be unconstitutional as an endeavor to foist nonjudicial functions upon the courts. We do not interpret the decision as a holding that an order of a civil service commission may not be attacked in court as being arbitrary, capricious, or beyond or without authority of law.

See also the opinion of the Supreme Court of Illinois in Aurora v. Schoeberlein, 230 Ill. 496, 82 N.E. 860.

■■■ Section 18, as we interpret it, goes further than to provide procedural rules for judicial review of the orders of the Commission, and undertakes to impose upon the district court administrative as well as judicial functions, and is therefore invalid, as was held by the trial court.

The judgment is affirmed.

■■■ Both parties, speaking collectively, having appealed, and the judgment of the trial court being affirmed, the costs of appeal are assessed jointly and severally against all parties to the appeal.